IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KRAMER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AUTOBYTEL, INC., a Delaware Corporation; B2MOBILE, LLC, a California limited liability company; and LEADCLICK MEDIA, INC., a California Corporation,<br><br>    Defendants.<br>_____/ | No. 10-cv-02722 CW<br><br>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS (Docket Nos. 58 & 66) |

    Plaintiff Kramer has filed suit against Defendants Autobytel, Inc., B2Mobile, LLC, and LeadClick Media, Inc., under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (TCPA). The complaint alleges that Defendants sent Kramer and other similarly situated individuals thousands of unauthorized text messages. On October 26, 2010, on the parties' stipulation, the Court dismissed with prejudice Kramer's individual claims against Defendant Autobytel, and dismissed without prejudice the

putative class claims Kramer advanced against Defendant Autobytel. Docket No. 100.

The remaining two Defendants, B2Mobile and LeadClick, now move to dismiss Kramer's claims. Docket Nos. 58 and 66. Kramer opposes the motions. Because the motions have drawn into question the TCPA's constitutional validity, the Court notified the United States of the constitutional challenge. Docket Nos. 71 & 73. The United States has intervened in the matter, and filed a memorandum opposing Defendants' constitutional arguments. Docket No. 98.

Having considered all of the parties' submissions and the Government's memorandum, the Court DENIES Defendants' motion to dismiss.

## BACKGROUND

Kramer's initial complaint named only Autobytel and B2Mobile as Defendants. Docket No. 1., Compl. at ¶¶ 7 & 8. Kramer subsequently amended his complaint, adding LeadClick as a Defendant. Docket No. 20, First Amended Compl. at ¶ 9.

The First Amended Complaint (1AC), challenged in this motion, alleges the following facts. Kramer, an Illinois resident, received ten text messages from Short Message Service (SMS) Code 77893, a code operated by Defendant B2Mobile. 1AC ¶¶ 6 & 20-22. On information and belief, Kramer alleges that B2Mobile acquires a list of phone numbers from a third-party, and then sends massive amounts of spam text message advertisements, including advertisements for Autobytel. 1AC ¶ 18. "Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." 1AC ¶ 37.

2

The mass transmission of these spam text messages began at least in April, 2009, and reached thousands of consumers nation-wide. 1AC ¶ 19. Kramer received one such message on or about April 1, 2009. 1AC ¶ 20. The "from" field of the message identified the SMS short code 77893. 1AC ¶ 21. The body of the text message read:

> NEED SOME EXTRA CASH FOR YOU [sic] NEW EDUCATION?
> GET A CASH ADVANCE OF UP TO $1500!
> GO TO WWW.CASHPOTUSA.COM
> PROMO CODE: 7PX5E TO END REPLY STOP.

1AC ¶ 21. Immediately after receiving the above text message, Plaintiff responded "Stop" in a text message to opt out of the advertising messages. 1AC ¶ 22. Kramer alleges that he continued to receive text advertisements from SMS short code 77893. 1AC ¶ 23. Kramer's complaint included one additional example of a text message that he received from SMS short code 77893. About October 20, 2009, Kramer received the following text from B2Mobile:

> DEAL ALERT: CARS FROM $99/MO! AVAIL. IN YOUR AREA!
> GO TO:WWW.CARS499.COM PROMO: 39075
> FOR IMMEDIATE LISTINGS CALL 1800-387-6230.
> TO END REPLY STOP.

1AC ¶¶ 24-26. The website promoted in the above text message allegedly directed consumers to MyRide.com, an automotive referral website operated by Autobytel. 1AC ¶ 26. At no time did Kramer consent to the receipt of such text messages from Defendants. 1AC ¶ 28.

3

Kramer alleged that, in "an effort to promote its automotive products to consumers, Autobytel, the proprietor of one of the nation's largest automotive referral services, through marketing partners such as LeadClick, engaged B2Mobile to conduct an especially pernicious form of marketing: the transmission of unauthorized advertisements in the form of 'text message' calls to the cellular phones of consumers throughout the nation." 1AC ¶ 2. The complaint further stated, "In order to make their en masse transmission of text message advertisements economical, Defendants used lists of thousands of cellular telephone numbers of consumers acquired from third-parties." 1AC ¶ 30 (emphasis in original). "Defendant B2Mobile contracted with third parties to acquire lists of phone numbers for the sole purpose of sending spam text messages on behalf of advertisers for its own monetary gain. Defendant Autobytel contracted with LeadClick, who thereafter contracted with B2Mobile, for the purpose of advertising Autobytel's products and services through spam text messages." 1AC ¶ 39.

B2Mobile refers to itself as a mobile advertiser. In its motion to dismiss, LeadClick describes itself as a California corporation that provides a variety of products and services, including posting online information to solicit consumer names and contact information.

Defendants B2Mobile and LeadClick move to dismiss Plaintiff's complaint, arguing that the TCPA is so vague as to be

4

constitutionally void, and challenging the sufficiency of Kramer's pleading.

## LEGAL STANDARD

The Due Process Clause of the Fifth Amendment requires that individuals be given fair notice of what the law requires, so that they may conform their conduct accordingly. United States v. Williams, 553 U.S. 285, 304 (2008). A law is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Id. Even when a law restricts constitutionally protected activity, such as free expression, "perfect clarity and precise guidance have never been required[.]" Id.; Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989). A statute's vagueness is assessed "as applied to the particular facts at issue[.]" Holder v. Humanitarian Law Project, __ U.S. __; 130 S. Ct. 2705, 2718-19 (2010).

A sufficiently plead complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether a complaint is sufficient to state a claim, the court will take all

5

material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

Whether Plaintiff has stated a claim under the TCPA turns on the statutory language of 47 U.S.C. § 227(b)(1)(A)(iii). Section 227 of the TCPA, entitled "Restrictions on use of telephone equipment," provides:

(a) Definitions. As used in this section-

    (1) The term "automatic telephone dialing system" means equipment which has the capacity-

        (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

        (B) to dial such numbers.

(b) Restrictions on use of automated telephone equipment.

    (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-

        (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

        . . .

            (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other

>radio common carrier service, or any service for which the called party is charged for the call.

## DISCUSSION

I. The Constitutionality of the TCPA

Defendants argue that the TCPA is constitutionally void, because it is vague as to the meaning of "prior express consent" in the context of text messaging. The statute itself does not address this precise issue, and agencies and courts purportedly have failed to provide guidance. As a result, Defendants argue that they and the mobile advertising industry in general have not received notice of the parameters for lawful text messaging, with the degree of specificity that the Constitution requires. In particular, Defendants argue that they had insufficient notice that the TCPA's prohibition against telephone calls from automatic dialing systems without "prior express consent" applied to text messaging.

Defendants disregard ample guidance available to ensure compliance with the TCPA. Over seven years ago the Federal Communications Commission (FCC) explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . ." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003). In 2009, early in the time period during which Kramer allegedly

7

received the unsolicited text messages, the Ninth Circuit held unambiguously that a text message is a "call" for purposes of the TCPA. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009).

Furthermore, in cases involving fax transmissions, courts have held both advertisers and advertisement broadcasters subject to liability under the TCPA. Kopff v. Battaglia, 425 F. Supp. 2d 76, 92-93 (D.D.C. 2006); Accounting Outsourcing, LLC v. Verizon Wireless Personal Comm., L.P., 329 F. Supp. 789, 805-06 (M.D. La. 2004); American Blastfax, 121 F. Supp. 1085, 1089-90 (W.D. Tex. 2000)("It would circumvent the purpose of the TCPA to exempt Blastfax from potential liability on the theory that it plays no role in sending the advertisements at issue . . . Blastfax is not exempt from TCPA liability on the grounds that it is a mere "broadcaster" of third party advertisements.").

In Satterfield, the Ninth Circuit addressed the issue of express consent, defining it as "[c]onsent that is clearly and unmistakably stated." Id. at 955 (quoting Black's Law Dictionary). The court described in detail the steps that the plaintiff took to consent online to the delivery of promotional messages to her cellular phone. Id. at 949. Ultimately, the court held that the plaintiff's consent to receive promotional materials from one entity did not constitute consent to receive marketing from Defendants in the case. Id. at 955. Thus, the court's ruling gives valuable guidance about what the TCPA

8

requires, and provides a common sense interpretation of "express consent."

Defendants cite Leckler v. Cashcall, Inc., 554 F. Supp. 1025 (N.D. Cal. 2008), for the proposition that "prior express consent" under the TCPA is ambiguous in the context of text messaging. That decision, however, did not find ambiguity of the nature that Defendants in the present case assert. Leckler found ambiguity only as to whether the provision of a cell phone number on a loan application served as a express consent under the TCPA to receive automated calls from creditors. Leckler's finding of ambiguity in this limited context does not overshadow the clarity of the FCC's statement in 2003 that the TCPA encompasses text messaging, nor the subsequent Ninth Circuit decision in Satterfield. Furthermore, the decision was later vacated for lack of subject matter jurisdiction. Leckler v. Cashcall, Case No. C 07-04002, 2008 WL 5000528 (N.D. Cal.).

Because the FCC announced years ago that the TCPA encompasses text messages, and that is clearly the law in the Ninth Circuit, Defendants are obliged to examine FCC guidance and court decisions that address express consent for automated marketing under the TCPA. Though Defendants raise a number of hypothetical situations that may present challenges to discerning what the law requires, identifying "close cases" is not sufficient to invalidate a statute for vagueness under the Constitution. Williams, 553 U.S. at 305-06 (rejecting the lower court's use of hypothetical

9

situations to strike down a statute for vagueness, and stating, "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). For these reasons, Defendants' constitutional challenge is without merit.

II. The sufficiency of Kramer's complaint

Defendants challenge the sufficiency of Kramer's complaint on a number of bases. Defendants assert that Kramer provided only a conclusory allegation as to Defendants' use of an automatic telephone dialing system to send text messages. As an isolated assertion, it is conclusory to allege that messages were sent "using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." Such a naked assertion need not be taken as true. See Iqbal, 129 S. Ct. at 1049-50. However, read as a whole, the complaint contains sufficient facts to show that it is plausible that Defendants used such a system. Kramer described messages from SMS short code 77893, a code registered to B2Mobile. The messages were advertisements written in an impersonal manner. Kramer had no other reason to be in contact with Defendants. Cf. Kazemi v. Payless Shoesource, Inc., 2010 WL 963225, at *2 (N.D. Cal.); Abbas v. Selling Source, LLC, 2009 WL 4884471, at *3 (N.D. Ill.).

Defendants argue that Kramer insufficiently plead the size of the putative class. Given Defendants' online and mobile advertising business, and the factual allegations identified in the preceding paragraph, it is entirely plausible that thousands of individuals may be entitled to relief from Defendants' alleged misconduct. Requiring Kramer to plead with greater particularity facts as to the size of the putative class is unnecessary at this early stage of the litigation. The issue of numerosity is more properly determined on a motion for class certification. Holtzman v. Caplice, 2008 WL 2168762, at *2-3 (N.D. Ill.) (citing Wright, Miller & Kane, Federal Practice & Procedure, Civil, 3d § 1798 ("Compliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim[.]").

Both B2Mobile and Leadclick challenge the sufficiency of Kramer's allegations that they sent unauthorized messages, and his allegations about their role in the text messaging. Kramer, however, stated plainly that he never consented to the receipt of such messages, and described his attempt to opt out of receiving messages from SMS code 77893, which was allegedly registered to B2Mobile. Kramer described the relationship between B2Mobile, Autobytel, and LeadClick, and the roles involved in text message advertising. Though on a motion to dismiss the Court need not accept as true pleadings that are no more than legal conclusions or "formulaic recitations of the elements" of a cause of action,

11

Iqbal, 129 S. Ct. at 1951, well-plead facts are taken as true and construed in the light most favorable to the non-moving party. Telesaurus VPC v. Power, 2010 WL 3928945 (9th Cir.); Cahil v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

Finally, LeadClick attacks Kramer's complaint for failure to include details about the content and dates of eight of the ten text messages he allegedly received. Kramer has offered to make this information available informally and through discovery; LeadClick seeks to make such allegations a pleading requirement. To this end, LeadClick relies on Abbas, 2009 WL 4884471. In Abbas the plaintiff brought a class action lawsuit under the TCPA after allegedly receiving unsolicited text messages. The court found the plaintiff's allegations regarding the text messages he received insufficient, but granted leave to amend. In the sole passage to address the issue, the court stated:

> After alleging several facts regarding the initial, offending SMS message he allegedly received from Selling Source, Abbas makes broad, conclusory allegations regarding the "numerous" further messages that he allegedly received. See Compl. ¶¶ 17, 18. While Rule 8(a)(2) does not require facts to be pled with particularity, Abbas's allegations here provide no notice to Selling Source about the subsequent messages Abbas allegedly received. There is no allegation regarding when Abbas received the later messages, what those messages stated, or from what numbers he received the later messages. Some fair notice to Selling Source is particularly necessary here because Abbas seeks recovery for each violation of the TCPA.

Abbas, 2009 WL 4884471 at *2.

12

To counter LeadClick's argument, Kramer cites Kazemi, 2010 WL 963225, and Lozano v. Twentieth Century Fox Film Corp., 702 F. Supp. 2d 999 (N.D. Ill. 2010).  In both cases the complaints included details as to the first text message that the plaintiffs allegedly received, but few allegations about the subsequent text messages.  Unlike Abbas, the courts did not address the sufficiency of the pleadings with respect to the text messages, so they provide no guidance on the precise issue that LeadClick has raised.

As a Defendant, LeadClick is entitled to notice of the bases for the lawsuit Kramer has brought.  It is also true that Rule 8 does not require Kramer to plead his claim with particularity.  LeadClick argues that, in the complaint's current form, "There is no way to tell what involvement, if any, LeadClick had in the dissemination of the remaining eight text messages."  However, this misses the crux of Kramer's putative class action under the TCPA.  The core of the complaint is that Defendants each played a role in sending en masse unsolicited text messages to Kramer and possibly thousands of other individuals.  The Court finds persuasive Kramer's argument that, because the TCPA is designed to combat mass unsolicited commercial telemarketing, at times involving thousands of calls or text messages, notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every text message.

13

CONCLUSION

Because the TCPA is not unconstitutionally vague, and Kramer has adequately plead his complaint, the Court DENIES Defendants' motion to dismiss. The parties shall appear before the Court for a case management conference, as previously scheduled, on January 4, 2011 at 2:00 pm.

IT IS SO ORDERED.

Dated: 12/29/2010

CLAUDIA WILKEN
United States District Judge