1
2
3
4

SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

5
6
7
8
9
10
11
12

RYAN D. ANDREWS (*Pro Hac Vice*)
randrews@edelson.com
CHRISTOPHER L. DORE (*Pro Hac Vice*)
cdore@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
ATTORNEYS FOR PLAINTIFF

13

## UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

## OAKLAND DIVISION

16
17
18
19
20
21
22
23
24
25

CHRISTOPHER KRAMER, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

AUTOBYTEL, INC., a Delaware corporation,
and B2MOBILE, LLC, a California limited
liability company, and LEADCLICK MEDIA,
INC., a California corporation,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 10-cv-02722-CW

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT**

Location: Courtroom 2, 4th Floor
1301 Clay Street
Oakland, CA 94612-5212
Date: July 28, 2011
Time: 2:00 p.m.

Honorable Claudia A. Wilken

26
27
28

Plaintiff's Motion for Preliminary Approval
of Class Action Settlement Agreement

Case No. 10-cv-02722-CW

1

## NOTICE OF MOTION

2    NOTICE IS HEREBY GIVEN that the Plaintiff will move the Court, pursuant to Federal

3  Rule of Civil Procedure 23(e) to grant preliminary approval of the proposed class action

4  settlement entered into by the parties on July 28, 2011 at 2:00 P.M., or at such other time as may

5  be set by the Court, at 1301 Clay Street, Oakland, CA 94612, Courtroom 2, Forth Floor, before the

6  Honorable Claudia A. Wilken.

7    Plaintiff seeks preliminary approval of this class action settlement, certification of the

8  proposed Classes, appointment of the Plaintiff as Class Representative, and appointment of his

9  counsel as Class Counsel.  The Motion is based on this Notice of Motion, the Brief in Support of

10  the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any

11  other matter that may be submitted at the hearing.

12  Dated: July 18, 2011                          Respectfully Submitted,

13

14                                               CHRISTOPHER KRAMER, individually and on
                                                 behalf of classes of similarly situated individuals,
15

16

17                                                 /s/ Ryan D. Andrews

18

19                                               RYAN D. ANDREWS (*Pro Hac Vice*)
                                                 randrews@edelson.com
20                                               CHRISTOPHER L. DORE (*Pro Hac Vice*)
                                                 cdore@edelson.com
21                                               EDELSON MCGUIRE, LLC
                                                 350 North LaSalle, Suite 1300
22                                               Chicago, IL 60654
                                                 Telephone: (312) 589-6370
23                                               Facsimile: (312) 589-6378

24

25

26

27

28

Plaintiff's Motion for Preliminary Approval          ii                Case No. 10-cv-02722-CW
of Class Action Settlement Agreement

## Table of Contents

I.   NATURE OF THE LITIGATION ............................................................... 2

   A. Summary of the Litigation, Mediation & Settlement ............................. 2

   B. Defendants' Position ......................................................................... 4

II.  TERMS OF THE SETTLEMENT .............................................................. 4

   A. Class Definitions ............................................................................. 4

   B. Injunctive Relief ............................................................................. 5

      1. *Obtaining Prior Express Consent* ................................................... 5

      2. *Prohibition of Future Messages* ..................................................... 6

   C. Class Member Payments ................................................................... 6

   D. Cy Pres ........................................................................................... 6

   E. Other Relief .................................................................................... 7

      1. *Payment of Notice and Administrative Fees* ................................... 7

      2. *Compensation for the Class Representative* ................................... 8

      3. *Payment of Attorneys' Fees and Expenses* ..................................... 8

   F. Release .......................................................................................... 8

III. THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED ............ 8

   A. The Requirement of Numerosity is Satisfied ...................................... 9

   B. The Requirement of Commonality is Satisfied .................................... 9

   C. The Requirement of Typicality is Satisfied ....................................... 10

   D. The Requirement of Adequate Representation is Satisfied .................. 11

   E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ........ 12

      1. *Common Questions of Law and Fact Predominate* ......................... 12

      2. *The Class Action is the Superior Method of Adjudication* .............. 13

IV.  THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL ........ 13

V.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL ........ 14

VI.  THE PROPOSED PLAN OF CLASS NOTICE ........................................... 16

**VII.    CONCLUSION**................................................................................................. 18

## **Table of Authorities**

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 8, 9, 12, 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ----, 2011 WL 2437013 (June 20, 2011)................ 9, 10

**United States Circuit Court of Appeals Cases:**

*Blake v. Arnett*, 633 F.2d 906 (9th Cir. 1981) .................................................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................................9-10, 11, 12, 15

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)......................................15

*In re Syncor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008)...........................................14, 15

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................................ 15

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ........................................................ 9

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008)............................................. 12

*Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168 (9th Cir. 2010)....................... 10, 13

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ................................ 12

**United States District Cases:**

*Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413 (S.D. Cal. Dec. 10, 2008) ........................... 16

*CE Design v. Beaty Constr. Inc.*, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ........................... 12

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ....................................... 9

*Espinal v. Burger King Corp. et al.*, No. 09-20982 (S.D. Fla. 2010) ........................... 12

*In re Indep. Energy Holdings PLC*, No. 00-CV-6689, 2003 WL 22244676 (S.D.N.Y 2003)...... 15

*In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................... 16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................... 14, 15

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-6344 (N.D. Ill. 2011)................. 11, 16

*Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.)........................................12, 16

*Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) ........................................ 9

*Weinstein, et al. v. The Timberland Company*, No. 06-cv-0454 (N.D. Ill.) ................................. 12

**Statutes**

Fed. R. Civ. P. 23 ................................................................................................................*passim*

28 U.S.C § 1715 ...................................................................................................................... 18

47 U.S.C. § 227, *et seq.* ........................................................................................................... 1

**Miscellaneous:**

Alba & Conte, 4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ............................................. 14, 17

MANUAL FOR COMPLEX LITIGATION (3d ed. 1995) ........................................................ 14

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ............................................................. 8, 14

1       The advent of the cell phone and the SMS text message, while revolutionizing the way

2   people communicate with one another, has also spawned the practice of *en masse* text message

3   solicitation by marketers and advertisers looking for cheap and direct ways to target individual

4   consumers.  This proposed settlement involves allegations that Defendants B2Mobile, LLC

5   ("B2Mobile") and LeadClick Media, Inc. ("LeadClick") sent or cause to be sent text message

6   advertisements to numerous cellular phone owners without first obtaining the requisite "prior

7   express consent" in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

8   §227 *et seq.*  (*See* Docket Numbers ("Dkt. No.") 1 & 20.)

9       Plaintiff Christopher Kramer, having himself allegedly received numerous unsolicited text

10  message advertisements by or on behalf of Defendants, to which he did not consent, initiated this

11  class action.  Both Defendants responded by filing motions to dismiss challenging the

12  constitutionality of the TCPA, as well as the sufficiency of the pleadings.  (Dkt. Nos. 25, 36, 37,

13  58 & 66.)  Following extensive briefing, as well as the intervention of the United States in

14  opposition of the constitutional challenge, this Court denied Defendants' motions to dismiss in a

15  published opinion.  (Dkt. Nos. 98 & 106.)  After denial of Defendants' motions to dismiss, the

16  parties each propounded substantial discovery and further agreed to mediate with Professor Eric

17  D. Green of Resolutions, LLC.  (*See* Dkt. Nos. 105, 107, & 108.)

18      On March 29, 2011, proposed Class Counsel, Defendants, Defendants' insurers, and in-

19  house as well as outside counsel for Defendants engaged in a daylong mediation with Professor

20  Green in San Francisco.  After several rounds of arms-length negotiations with the assistance of

21  Professor Green, the parties were able to agree on the principle terms of a global settlement

22  agreement.  In the several months thereafter, counsel for the parties continued to negotiate the

23  detailed terms of the executed Class Action Settlement Agreement ("Settlement Agreement"), a

24  copy of which is attached as Exhibit 1 hereto.

25      The resultant settlement is an exceptional result for the members of the proposed classes.

26  The Settlement Agreement creates two separate settlement funds totaling $12,200,000 from which

27  members of the two proposed classes who submit valid claims will receive $100 cash settlement

28  payments or a lesser *pro rata* amount (depending on the number of valid claims submitted).  The

1  Settlement Agreement additionally provides for industry-changing injunctive relief requiring

2  Defendants individually, and via modifications of contracts with their business partners, to ensure

3  that prior express consent is obtained through a clear statement that a consumer is agreeing to

4  receive text message advertisements by taking affirmative action to agree to be a recipient.  The

5  Settlement agreement further requires Defendants or their business partners to retain proof of all

6  consumer consent to receive text message ads for four years and affords members of both

7  proposed classes the opportunity to remove their cellular phone numbers from databases where

8  future text messages could be sent by or on behalf of Defendants.

9        The results achieved by the Settlement Agreement—which was structured after similar

10  settlements that have received final approval by this Court as well as by federal courts in Illinois

11  and Florida—are well beyond those required for preliminary approval.  Plaintiff thus moves the

12  Court to preliminarily approve the instant Settlement Agreement, certify the proposed classes, and

13  appoint Jay Edelson, Myles McGuire, Ryan D. Andrews, and Christopher L. Dore of Edelson

14  McGuire LLC as Class Counsel.  For convenience, proposed dates and deadlines leading to a final

15  approval hearing are provided in the proposed order separately submitted to the Court.

16  **I.      NATURE OF THE LITIGATION**

17        **A.      Summary of the Litigation, Mediation & Settlement**

18        On November 17, 2009, Plaintiff Christopher Kramer brought this class action in the

19  United States District Court for the Western District Court of Washington alleging that he

20  received several unauthorized text message advertisements sent by or on behalf of Autobytel, Inc.

21  and B2Mobile in violation of the TCPA.  (Dkt. No. 1.)  On April 19, 2010, Plaintiff amended his

22  complaint, adding LeadClick as a Defendant.  (Dkt. No. 20.)  Soon thereafter, B2Mobile and

23  LeadClick filed motions to transfer and/or dismiss the case from Washington based on

24  jurisdictional grounds, to which Plaintiff consented to the transfer of this litigation to the United

25  States District Court for the Northern District of California. (Dkt. Nos. 25, 34, 36, & 37.)  On

26  October 26, 2011, as a result of an individual settlement and upon stipulation between Plaintiff

27  and Autobytel, the Court dismissed with prejudice Plaintiff's individual claims against Autobytel,

28  and dismissed without prejudice the putative class claims against Autobytel. (Dkt. Nos. 99 &

1 | 100.)

2 | On July 14, 2011, B2Mobile and LeadClick each filed motions to dismiss, challenging

3 | both the constitutionality of the TCPA as vague when applied to text messaging, as well as the

4 | sufficiency of Plaintiff's pleadings.  (Dkt. Nos. 58 & 66.)  Due to the fact the motions called into

5 | question the constitutionality of the TCPA, the United States Department of Justice was given

6 | notice of the challenges and intervened in the case for the purpose of opposing the constitutional

7 | challenges.  (Dkt. Nos. 71, 73 & 98.)  After extensive briefing, the Court issued its opinion

8 | denying Defendants' motions to dismiss on both the constitutional and pleading grounds.  (Dkt.

9 | No. 106.)

10 | Following the Court's ruling on the motions to dismiss and in accordance with the Rule 26

11 | meet-and-confer that followed, the parties agreed to move forward with discovery while

12 | simultaneously scheduling a mediation with nationally-recognized mediator Professor Eric D.

13 | Green of Resolutions, LLC to attempt to resolve the matter.  (*See* Dkt. Nos. 105, 107, & 108.)

14 | Prior to the mediation, the Parties entered into an agreement to informally exchange answers to

15 | certain interrogatories, documents and other information that they agreed were needed to

16 | effectively engage in the mediation process.  (*See* Declaration of Ryan Andrews ¶¶ 2-3, attached

17 | hereto as Exhibit 2).  In addition, Plaintiff sat for a full-day deposition answering the questions of

18 | Defendants' counsel.  (Andrews Decl. ¶ 2.)

19 | On March 28, 2011, proposed Class Counsel, along with LeadClick's Counsel,

20 | B2Mobile's Counsel, corporate representatives of each Defendant, representatives of their insurers

21 | American International Specialty Line Insurance Company ("AISLC") and Lloyd's of London,

22 | and counsel for both insurers, met in San Francisco for a formal mediation with Professor Green,

23 | with Plaintiff Kramer available by telephone.  (Andrews Decl. ¶ 3.)  Professor Green presided

24 | over a full day of extensive arm's length mediation between all Parties, consisting of multiple

25 | rounds of negotiations.  (Andrews Decl. ¶ 3.)  The result of these negotiations was the successful

26 | agreement as to the principal terms of the Settlement, which provides both a sizeable amount of

27 | relief for individual Class Members, as well as exceptional injunctive relief to the entire Class.  At

28 | the conclusion of the mediation, and with the informed oral consent of Plaintiff Kramer, the

1  principal terms were formalized in a signed Memorandum of Understanding. (Andrews Decl. ¶

2  3.) The Parties now seek preliminary approval of this Settlement Agreement.

3  **B.      Defendants' Position**

4  At all times, Defendants have denied and continue to deny any wrongdoing whatsoever, or

5  that they committed, or have attempted to commit, any wrongful acts or violations of law or duty,

6  including, but not limited to, those alleged in the Action. (Ex. 1, Recital H.) Defendants contend

7  that they have acted properly in all regards in connection with the preparation and dissemination

8  of any text messages, whether these messages were disseminated by the Defendants or third

9  parties acting independently on their behalf. *Id.* Defendants also maintain that they have strong,

10 meritorious defenses to the claim alleged in the Action as well as strong, meritorious defenses to

11 class certification and that they were prepared to vigorously defend all aspects of the Action. *Id.*

12 Nonetheless, taking into account the uncertainty and risks inherent in any litigation,

13 Defendants have concluded that further defense of the Action would be protracted, risky,

14 burdensome, and expensive, and that it is desirable and beneficial to them that the Action be fully

15 and finally settled and terminated in the manner and upon the terms and conditions set forth in this

16 Agreement. (Ex. 1, Recital H.)

17 **II.    TERMS OF THE SETTLEMENT**

18 The terms of the Settlement are set forth in the Settlement Agreement attached hereto as

19 Exhibit 1 and briefly summarized as follows:

20 **A.      Class Definitions**

21 The Settlement Agreement provides for two settlement classes, the "B2Mobile Class" and

22 the "LeadClick Auto Class." The classes are defined as follows:

23  **"B2Mobile Class"** means all Persons in the United States and its territories who,
    from January 1, 2008 until the date of preliminary approval, received a text
24  message from Short Code 77893 or a text message containing a B2Mobile
    Website that was transmitted by or on behalf of B2Mobile and was sent without
25  such Person's prior express consent. Excluded from the B2Mobile Class are
    LeadClick Auto Class Members (as defined herein and to the extent they only
26

27

28

received auto-related text messages).[1]

**"LeadClick Auto Class"** means all persons in the United States and its territories who, from January 1, 2008 until the date of preliminary approval, received an automobile-related text message from Short Code 77893 or an automobile-related text message containing a B2Mobile Website that was transmitted by or on behalf of B2Mobile and was sent without such Person's prior express consent.

(Ex. 1, §§ 1.2; 1.24.)

### B.   Injunctive Relief

At all times during settlement negotiations, Plaintiff and proposed Class Counsel maintained that any class settlement agreement would need to include injunctive relief primarily designed to change the Defendants' manner of doing business, influence others in the industry to change their manner of doing business, and ensure that explicit prior express consent is obtained from consumers before they receive any text message advertisements by or on behalf of Defendants.  (Ex. 1, § 2.1; *see also* Andrews Decl. ¶ 7.)  The instant Settlement Agreement includes such provisions.  (Ex. 1, § 2.1.)

### 1.   *Obtaining Prior Express Consent*

Defendants have consented to the entry of an injunction requiring that for a period of four years they are prohibited from advertising any website or offer via SMS messages to cellular phones, unless each potential text-message recipient has given explicit prior written consent to receive such messages.  Defendants are then required to keep on file documented proof of any consent received for the next four years.  (Ex. 1, § 2.1.)

To ensure that prior express consent is being properly obtained, Defendants have agreed to amend their business partner agreements that express consent can be obtained "by oral or written means, including electronic methods," and any authorization allowing Defendants to obtain a cellular phone number from a website will include an affirmative action on the part of the consumer, such as checking a box or clicking on an "I Accept," "Submit," "Proceed," or similar button, with disclosures informing the consumer that the affirmative action will result in the receipt of text messages.  This disclosure will be displayed on the same page, within a reasonable

---

[1] Further exclusions from the Settlement Classes are noted in the Settlement Agreement.

1  distance from the telephone number submit field, and in text of sufficient size and contrast to be

2  clearly legible.  (Ex. 1, § 2.1.)

3            **2.**     *Prohibition of Future Messages*

4        Each Claim Form will also include an option to remove any LeadClick Auto Class

5  Member's or B2Mobile Class Member's cell phone number from any list or database of numbers

6  to which text messages could be sent by Defendants.  (Ex. 1, § 2.2 and Exhibit B to Settlement

7  Agreement.)

8        **C.**     **Class Member Payments**

9        Defendants have agreed to provide up to $100 to each class member who submits a valid

10  claim form from two separate settlement funds totaling $12,200,000: the $10 million LeadClick

11  Settlement Fund and $2.2 million B2Mobile Settlement Fund.[2]  In the event that the total amount

12  required to pay $100 for each claim would exceed the amount in the LeadClick or B2Mobile

13  Settlement Funds after payment of LeadClick's and B2Mobile's portions of the Notice, Settlement

14  Administration Expenses, the Fee Award, and the incentive award to the Class Representative,

15  each LeadClick Auto or B2Mobile Class Member shall receive a *pro rata* share of the amount

16  remaining in the respective settlement fund.  (Ex. 1, §§ 2.3-2.4.)

17        However, should either a LeadClick Auto or B2Mobile Class Member's *pro rata* share be

18  calculated to be less than $5, then all payments that would have been distributed to members of

19  the classes shall be proportionally distributed to the *cy pres* recipients described below and in the

20  Settlement Agreement.  (Ex. 1, §§ 2.3-2.4.)  Further, any monies remaining in the B2Mobile

21  Settlement Fund after all claims and expenses are paid, inclusive of uncashed checks, shall be

22  distributed to the *cy pres* recipients.  (Ex. 1, §§ 2.4(d).)

23        **D.**     **Cy Pres**

24        In the event that a *cy pres* distribution occurs under any of the circumstance described

25

26     [2] The amounts of the respective settlement funds equal the total available limits of each
Defendant's insurance policy, were heavily influenced by the financial condition of the

27  Defendants, and the Settlement Agreement includes confirmatory discovery provisions to ensure
veracity of these representations.  (Andrews Decl. ¶ 7; Ex. 1, § 10.1.)

28

above, the Settlement Administrator will distribute the money to one or more of the following *cy pres* recipients, subject to approval of the Court:

- **Habitat for Humanity** (www.habitat.org): Provides affordable houses to families in need and since 1976 has built or repaired over 400,000 houses worldwide.

- **Big Brothers Big Sisters of the Bay Area** (www.bbbsba.org): Provides one-on-one mentoring for children facing adversity with the mission of improving their lives and strengthening communities.

- **American Red Cross** (www.redcross.org): The American Red Cross is the nation's leading emergency response organization for victims of war and victims of natural disasters, providing food, shelter, and other services.

- **Operation HOPE** (www.operationhope.org): Operation HOPE expands economic opportunity in underserved communities through economic education and empowerment.

- **Fisher House Foundation** (www.fisherhouse.org): Fisher House donates "comfort homes" that enable family members of wounded veterans to be close to family members during hospitalization for an illness or injury.

- **National Center for Missing and Exploited Children** (www.missingkids.com): Operates both as a resource on the issue of missing and sexually exploited children while also providing information and resources to law enforcement, parents, and children.

The proportional distribution of the remaining monies will be made based on the percentage of LeadClick Auto or B2Mobile Class Members selecting each non-profit charitable organization listed on the Claim Form.[3]  (Ex. 1, § 1.14.)

**E.     Other Relief**

In addition to the individual and injunctive relief discussed above, the Defendants have agreed to the following relief:

**1.     *Payment of Notice and Administrative Fees*:** All Settlement Administration Expenses will be paid out of the two settlement funds and be apportioned by the percentages prescribed by the Settlement Agreement.  (Ex. 1, § 1.48.)

**2.     *Compensation for the Class Representative*:** In addition to any award

---

[3] These descriptions and links to each organizations' relevant website, will be provided on the Settlement Website, the text of which is attached hereto as Exhibit B to the Settlement Agreement.

1 under the Settlement, and in recognition of his efforts on behalf of the proposed classes,

2 Defendants have agreed to pay from the respective settlement funds, subject to approval of the

3 Court, an incentive award of $10,000.  (Ex. 1, §§ 8.4-8.6.)

4        **3.**    ***Payment of Attorneys' Fees and Expenses***:  Under the Settlement

5 Agreement, Defendants have agreed as reasonable and to not oppose proposed Class Counsel's

6 request, subject to Court approval, for up to $3,050,000 for attorneys' fees and reimbursement of

7 expenses if proposed Class Counsel limits its request to this amount.  (Ex. 1, §§ 8.1-8.3.)

8        **F.**    **Release**

9      In exchange for the relief provided above, and upon the entry of a final order approving

10 this settlement, Defendants and each of their related affiliates and entities will be released from

11 any claims, whether know or unknown, arising out of or relating to LeadClick or B2Mobile's

12 involvement in the transmission of any unauthorized text messages from Short Code 77893 or any

13 text message containing a B2Mobile Website.  (*See* Ex. 1, §§ 3, 1.12, & 1.42-1.45 for the full

14 release.)

15 **III.**    **THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED**

16      Before granting preliminary approval of a settlement, the Court should determine that the

17 proposed settlement classes are proper for settlement purposes, and thus appropriate for

18 certification.  MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v.*

19 *Windsor*, 521 U.S. 591, 620 (1997).  Certification of a class is proper when the plaintiff

20 demonstrates that the proposed class and proposed class representative meet the following

21 prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.

22 Fed. R. Civ. P. 23(a)(1-4).

23      In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class certification

24 must also meet at least one of the three provisions of Rule 23(b).  Fed. R. Civ. P. 23(b); *Blake v.*

25 *Arnett*, 663 F.2d 906, 912 (9th Cir. 1981).  Where, as here, a plaintiff seeks certification under

26 Rule 23(b)(3), he or she must demonstrate that common questions of law or fact predominate over

27 individual issues and that maintaining the suit as a class action is superior to other methods of

28 adjudication.  Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16; *Sullivan v. Kelly Services,*

*Inc.*, 268 F.R.D. 356, 364-65 (N.D. Cal. 2010).  The Court should accept the allegations of the plaintiff's complaint as true, but may consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis.  *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).  In this case, Plaintiff meets each of the prerequisites for the certification of the two classes—the LeadClick Auto Class and the B2Mobile Class—in the Settlement Agreement.

### A.       The Requirement of Numerosity is Satisfied

The first prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  To satisfy this requirement there is no "specific" number required, nor is the plaintiff required to state the "exact" number of potential class members.  *Celano*, 242 F.R.D. at 548.  Generally, the numerosity requirement is satisfied when the class comprises 40 or more members.  *See id.* at 549.

Here, the proposed LeadClick Auto Class is comprised of 24,226,464 consumers nationwide and the B2Mobile Class contains 47,169,154 consumers—numbers that more than satisfy the numerosity requirement for each class.[4]  (Andrews Decl. ¶ 4.)  Accordingly, each proposed class is so numerous that joiner of their claims is impracticable.

### B.       The Requirement of Commonality is Satisfied

The second threshold to certification requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality may be demonstrated when the claims of all class members "depend upon a common contention" and "even a single common question will do."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ----, 2011 WL 2437013, *7, 11 (June 20, 2011); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.")  The common contention must be of such a nature that it is capable of class wide resolution, and that the "determination of

---

[4] Many potential class members, like Plaintiff Kramer, are members of both proposed classes having received automobile and non-automobile text message ads by or on behalf of Defendants.

1   its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

2   one stroke." *Wal-Mart,* 2011 WL 2437013 at *7.  Moreover, the permissive standard of

3   commonality provides that "[w]here the circumstances of each particular class member vary but

4   retain a common core of factual or legal issues with the rest of the class, commonality exists."

5   *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

6          In the instant case, all members of both the LeadClick Auto Class and the B2Mobile Class

7   share the common claim arising out of the same activity, having been sent text message

8   advertisements to their cellular phones, which were allegedly transmitted to them by or on behalf

9   of Defendants without their prior express consent.  These allegations resulted in each class sharing

10  a common statutory TCPA claim that likewise results in common and shared factual and legal

11  questions such as: (a) whether the text message advertisements sent to the cellular phones of the

12  members of each class were sent by or on behalf of the Defendants; (b) whether Defendants or

13  their agents received and maintained proof of prior express consent to receive text messages from

14  members of each class; (c) whether the equipment used to send the allegedly offending text

15  messages was an "automatic telephone dialing system" ("ATDS"); (d) whether Defendants did so

16  knowingly and willfully; and (e) whether Plaintiff and the members of each class are entitled to

17  statutory relief as a result of this conduct.  In accordance with the Supreme Court's recent holding

18  in *Wal-Mart,* the determination of these legal issues would resolve the claims of all members of

19  both classes in one stroke.  Considering the common nature of the issues and facts that bind each

20  class together, the element of commonality satisfied.

21          **C.      The Requirement of Typicality is Satisfied**

22          Rule 23 next requires that the representative plaintiff's claims are typical of those of the

23  putative class or classes he or she seeks to represent.  Fed. R. Civ. P. 23(a)(3).  The typicality

24  requirement ensures that "the interest of the named representative aligns with the interests of the

25  class." *Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

26  Typicality is measured under a permissive standard and does not require that the representative's

27  claims be substantially identical, but only that they are "reasonably coextensive with [the claims]

28  of absent class members." *Hanlon,* 150 F.3d at 1020.

1    In the instant action, allegedly unauthorized text message advertisements were sent to

2    Plaintiff Kramer and the members of each of the proposed classes by or on behalf of the

3    Defendants.  As a result, Plaintiff and the proposed classes have alleged that this conduct violated

4    the TCPA, which would provide identical statutory damages to all members of both proposed

5    classes.  Plaintiff Kramer's representation of each proposed class is appropriate because he

6    received both automobile related and non-automobile related text messages sent by or on behalf of

7    both Defendants, qualifying him as a member of both the LeadClick Auto and B2Mobile Classes.

8    As such, Kramer's claim for relief under the TCPA is typical, if not wholly identical to those of

9    the proposed Classes, and 23(a)(3)'s requirement for typicality is met.

10    **D.    The Requirement of Adequate Representation is Satisfied**

11    The final Rule 23(a) prerequisite requires that the proposed class representative has and

12    will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

13    To determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs

14    and their counsel have any conflicts of interest with other class members and (2) will the named

15    plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150

16    F.3d at 1020.

17    Plaintiff Kramer's interests are entirely representative of and consistent with the interests

18    of both proposed classes—all have allegedly received unauthorized text message advertisements

19    sent by or on behalf of the Defendants.  Further, Plaintiff's active participation in this litigation

20    from diligently participating in answering written discovery, to appearing for his deposition, to

21    participating in the process resulting in the Settlement Agreement, demonstrates he has and will

22    continue to protect the interests of each proposed class.  (Andrews Decl. ¶¶ 2,10.)

23    Further, proposed Class Counsel have regularly engaged in major complex litigation, and

24    have extensive experience in consumer class action lawsuits, and especially those related to

25    telecommunications and the TCPA, that are similar in size, scope and complexity to the present

26    case.  (Andrews Decl. ¶ 5; *see also Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-6344

27    (N.D. Ill. 2011); *Weinstein, et al. v. The Timberland Company,* No. 06-cv-0454 (N.D. Ill.);

28    *Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.); *Espinal v. Burger King Corp. et*

*al.*, No. 09-20982 (S.D. Fla. 2010); and Firm Resume of Edelson McGuire, LLC, a copy of which is attached to the Andrews Decl. as Exhibit A.)  Both Kramer and Class Counsel will adequately represent the proposed classes and their interests.

> **E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

Once the prerequisites of Rule 23(a) have been met, Plaintiff must also demonstrate one of the three requirements of Rule 23(b) in order to certify the proposed classes.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. County of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon* 150 F.3d at 1022.

> **1.     *Common Questions of Law and Fact Predominate***

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem*, 521 U.S. at 623.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon* 150 F.3d at 1022.  Common legal and factual issues have been found to predominate where the class members' claims arose under the TCPA, and where the claims focused on the defendants' advertising practices.  *CE Design v. Beaty Constr. Inc.,* 2009 WL 192481, *8-9 (N.D. Ill. Jan. 26, 2009).

In this case, the core issues of fact and law that predominate are whether text messages ads promoting automobiles and other products were transmitted by and on behalf of the defendants, whether the system used to transmit these messages was an ATDS, and whether the requisite "prior express consent" to send the messages was obtained.  The central factual issue remaining in dispute is whether the Defendants transmitted the text message advertisements with an ATDS.  As such, the answers to these common questions that resulted from Defendants' alleged conduct are

the primary focus and central issue of this class action and thus predominate over any individual issues that may exist.

**2.** ***This Class Action is the Superior Method of Adjudication***

The certification of this suit as a class action is superior to any other method available to fairly, adequately, and efficiently resolve the claims of the members of both classes. The purpose of the superiority requirement is one of judicial economy and assurance that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76. Absent a class action and considering the fact that the combined classes include in excess of 47 million people, most members of the proposed classes would find the cost of litigating their claims to be prohibitive and such an influx of individual actions would be judicially inefficient. Also, because the action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## IV.   THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting similar class actions and other complex litigation. (Andrews Decl. ¶ 5.) Further, proposed Class Counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue in the action, and have successfully negotiated the

settlement of this matter to the benefit of both of the proposed classes.  (Andrews Decl. ¶¶ 7-9.)
Accordingly, the Court should appoint Jay Edelson, Myles McGuire, Ryan D. Andrews, and
Christopher L. Dore of Edelson McGuire, LLC as Class Counsel.

## V.    THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL

After certifying the proposed classes for the purpose of settlement, the Court should
preliminarily approve the settlement.  The procedure for review of a proposed class action
settlement is a well-established two-step process.  Fed. R. Civ. P. 23(e); *see also* CONTE &
NEWBERG, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 3839 (4th ed. 2002).  The first step is a
preliminary, pre-notification hearing to determine whether the proposed settlement is "within the
range of possible approval."  NEWBERG, §11.25, at 3839 (*quoting* MANUAL FOR COMPLEX
LITIGATION §30.41 (3d ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008);
*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  This hearing is not
a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the
putative Class members of the proposed settlement and to proceed with a fairness hearing.  *In re
Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be sent where
"the proposed settlement appears to be the product of serious, informed, non-collusive
negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class
representatives or segments of the class, and falls within the range of possible approval."  *Id.*

The Manual for Complex Litigation characterizes the preliminary approval stage as an
"initial evaluation" of the fairness of the proposed settlement made by a court on the basis of
written submissions and informal presentation from the settling parties.  MANUAL FOR COMPLEX
LITIGATION § 21.632 (4th ed. 2004).  If the Court finds a settlement proposal "within the range of
possible approval," it then proceeds to the second step in the review process—the final approval
hearing.  NEWBERG, §11.25, at 3839.

A strong judicial policy exists that favors the voluntary conciliation and settlement of
complex class action litigation.  *In re Syncor,* 516 F.3d at 1101 (*citing Officers for Justice v. Civil
Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)).  While the district court has discretion regarding the

approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A settlement negotiated with the assistance of an experienced private mediator is further proof that that the settlement was reached fairly and provides adequate relief. *In re Indep. Energy Holdings PLC*, 00 CV 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). Ultimately, the court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

There is little question that the proposed settlement is at least "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Only after extended arm's length negotiations, initially conducted under the supervision of Professor Eric D. Green and proceeding for several months thereafter, were the Parties able to reach the settlement that is being presented to the Court for preliminary approval. (Ex. 1, Recital G.) The fairness, reasonableness, and adequacy of the proposed settlement are apparent from both the substantial money relief and industry-revolutionizing injunctive relief being afforded to the members of the proposed classes.

As noted above, members of both proposed classes may file a claim to receive up to $100, payable from the combined $12,200,000 settlement fund. (Ex. 1, §§ 2.3-2.4.) This amount was heavily influenced by the financial conditions of the respective Defendants. In addition to the individual monetary benefits, Defendants have agreed to a broad scope of injunctive relief, the crux of which restricts Defendants or their business partners from transmitting any text message advertisements without first adhering to strict procedures to ensure that prior express consent from the potential recipients is obtained. (Ex. 1, § 2.1.) Defendants or their agents must keep documented proof of all prior express consent received for a period of four years after said consent is obtained. (Ex. 1, § 2.1.) Further, through the Claim Form, members of both classes may remove their cell phone numbers from any list or database from which text messages could be sent by or on behalf of B2Mobile or LeadClick. (Ex. 1, § 2.2.)

Although Plaintiff and his counsel are confident in the strength of the claims and that they

1 would ultimately prevail at trial, they also recognize that litigation is inherently risky.  (Andrews

2 Decl. ¶ 6.)  When the strengths of the Plaintiff's claim are weighed against the legal and factual

3 obstacles combined with the complexity of class action practice against experienced defense

4 counsel, it is apparent that the proposed settlement is clearly in the best interest of members of the

5 proposed class as it provides substantial monetary recovery and injunctive relief immediately.

6 (Andrews Decl. ¶¶ 6-9.)

7       Finally, the Court need not rule on a blank slate regarding the fairness, reasonableness, and

8 adequacy of the proposed Settlement Agreement.  A similar class action settlement has been

9 approved by this Court and other similar settlement have received final approval by other federal

10 courts nationwide.  *See Satterfield v. Simon & Schuster, Inc. et al.*, No. 06-cv-02893 CW (N.D.

11 Cal.); *Bellows v. NCO Fin. Sys., Inc.*, 3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec.

12 10, 2008); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-6344 (N.D. Ill. 2011).  As

13 with these similar cases, this settlement easily falls well "within the range of possible approval," is

14 fair, reasonable and adequate, and should thus be preliminarily approved.

15 **VI.    THE PROPOSED PLAN OF CLASS NOTICE**

16       To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides

17 that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best

18 notice practicable under the circumstances, including individual notice to all members who can be

19 identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*,

20 417 U.S. 156, 173 (1974).[5]  Rule 23(e)(1) similarly says, "[t]he court must direct notice in a

21 reasonable manner to all class members who would be bound by a proposed settlement, voluntary

22 dismissal, or compromise."  Fed. R. Civ. P. 23(e)(1).  Notice is "adequate if it may be understood

23 by the average class member." NEWBERG, § 11:53 at 167.   The substance of the notice to the

24

25     [5] Direct notice is not required in all circumstances, especially where mailed notice would effectively deplete the settlement fund.  *See e.g. In re MetLife Demutualization Litig.*, 689 F.

26 Supp. 2d 297, 345 (E.D.N.Y. 2010) (finding that in class action involving millions of class members, individual notice by mail was "inappropriate," burdensome, expensive and could

27 deplete the settlement fund, but notice via publication and a specially constructed website was both reasonable and appropriate.)

28

Plaintiff's Motion for Preliminary Approval of Class Action Settlement       16      Case No. 10-cv-02722-CW

1   settlement class must describe the nature of the action, the definition of the class to be certified,

2   the class claims and defenses at issue, as well as explain that settlement class members may enter

3   an appearance through counsel if so desired, request to be excluded from the settlement class, and

4   that the effect of a class judgment shall be binding on all class members.  *See* Fed. R. Civ. P. 23

5   (c)(2)(B).

6          After having solicited notice proposals from four respected class action settlement

7   administrators, the parties selected the instant Notice Plan, which was developed by Kinsella

8   Media / Rust Consulting ("Kinsella"), and will satisfy both the substantive and manner of

9   distribution requirements of Rule 23 and Due Process.  Because the only information known about

10  the members of the proposed classes is the cellular phone numbers to which text messages covered

11  by this settlement were sent, and available methods of direct notice such a mailing from addresses

12  obtained from reverse-directory searches of cell phone numbers or call centers dialing each

13  number were estimated to cost as much as the combined settlement funds, Kinsella developed an

14  innovative and wide-reaching five-part notice plan.  (*See* Declaration of Shannon Wheatman, a

15  copy of which is attached as Exhibit 3.)

16         First, Kinsella will implement a comprehensive publication notice plan by placing half-

17  page versions of the notice attached as Exhibit C to the Settlement Agreement in *Cosmopolitan*,

18  *ESPN The Magazine*, *Maxim*, *Newsweek*, *People*, and a 2/5 page ad in *Parade*.  (Wheatman Decl.

19  ¶¶ 19-21.)  Second, these publications will be supplemented by a wide-ranging online media

20  notice campaign, which will include internet banner ads on the 24/7 Network, the Adconion

21  Network, and the Microsoft Media Network, throughout the entire notice period.  (Wheatman

22  Decl. ¶ 22.)

23         Further, in order to more fully provide notice to Class Members, and because the subject

24  matter of this case centers on mobile phones, Kinsella will place publication notice through mobile

25  display banners on the Jumptap Mobile Advertising platform.  (Wheatman Decl. ¶ 25.)   In

26  addition, Kinsella will distribute to local, national, and syndicated news organizations discussing

27  the terms of the Settlement Agreement.  (Wheatman Decl. ¶ 26.)  Finally, the traditional "long

28  form" notice will be provided on a website at www.TextAdClass.com, which shall be

administered by Kinsella and allows for members of the classes to file Claim Forms on-line.  (Ex. 1, § 4.2(h); Wheatman Decl. ¶ 27.)

These publications, websites, press release, and the mobile advertising platform represent a wide cross section of media specifically chosen by Kinsella to target likely Class Members and attain the widest reach possible.  (Wheatman Decl. ¶¶ 8-19, 28-31.)  Copies of the proposed notices and Claim Form are attached as Exhibits B, C, and D to the Settlement Agreement.  The format and language of each form of notice has been drafted so that it is in plain language, is easy to read, will be readily understood by the members of the proposed classes, and thus will satisfy the requirements of Rule 23 and Due Process.[6]  (Wheatman Decl. ¶¶ 13, 28-29.)

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court certify the LeadClick Auto Class and B2Mobile Class, appoint Christopher Kramer as the class representative, appoint Kramer's counsel as Class Counsel, grant preliminary approval of the proposed Settlement Agreement, approve the form and manner of notice described above, and grant such further relief the Court deems reasonable and just.

Dated: July 18, 2011                          Respectfully Submitted,

CHRISTOPHER KRAMER, individually and on behalf of classes of similarly situated individuals,

 /s/ Ryan D. Andrews

One of Plaintiff's Attorneys

---

[6] Kinsella will also be sending notice to the required government officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  (Ex. 1, § 4.2(i).)

1

2   SEAN REIS (SBN 184004)
    sreis@edelson.com
3   EDELSON MCGUIRE, LLP
    30021 Tomas Street, Suite 300
4   Rancho Santa Margarita, California 92688
    Telephone: (949) 459-2124
5   Facsimile: (949) 459-2123

6
    RYAN D. ANDREWS (*Pro Hac Vice*)
7   randrews@edelson.com
    CHRISTOPHER L. DORE (*Pro Hac Vice*)
8   cdore@edelson.com
    EDELSON MCGUIRE, LLC
9   350 North LaSalle, Suite 1300
    Chicago, IL 60654
10  Telephone: (312) 589-6370
    Facsimile: (312) 589-6378
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on July 18, 2011, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: July 18, 2011                                 EDELSON MCGUIRE, LLC

By:    /s/ Ryan D. Andrews

Ryan D. Andrews