Joseph Darrell Palmer (SBN 125147)
Email: darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorney for Objector Steven Cope



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER KRAMER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AUTOBYTEL, INC., a Delaware Corporation, and B2MOBILE, LLC, a California Limited Liability Company, and LEADCLICK MEDIA, INC., a California Corporation,<br><br>Defendants. | Case No. 10-cv-02722-CW<br><br>**OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: January 26, 2012<br>Time: 2:00 p.m.<br>Place: Courtroom 2<br>Judge: Hon. Claudia A. Wilken |

COMES NOW, STEVEN COPE ("Objector") Class Member to this action, by and through his undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of his counsel's intent to appear at the January 26, 2012, final approval hearing, and requests award of an incentive fee for his role, if any, in improving the settlement for the benefit of the class members.

Objector, STEVEN COPE, represents to the court that he is a Class Member, qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT; his address is in San Diego County, California, and upon request by the Court or counsel in this action his attorney will provide his contact information. His cell telephone number on which he received unsolicited text messages from

1

Defendants ends in 8488. Objector affirms that he received a text message from number 77893 of the kind described in the notice of class action settlement and the Settlement Agreement. He cannot recall the exact date that it was received.

Objector Cope objects on the following grounds:

1. There are fundamental problems with the *cy pres* component of the settlement, which needs to be retooled before the settlement can be approved.

2. There is insufficient information regarding the benefit the class will receive, precluding approval until the Court, and the Class, can determine what their benefits are.

3. The requirements for making an objection are onerous and inconsistent with the purposes of Rule 23(h).

4. The declaration of the mediator, and any reliance thereon by the Court in approving the settlement, are wholly improper, as the contents of a mediation cannot be used for any purpose outside the mediation.

5. Based upon the nebulous benefits available to the Class, the attorneys' fees are too high and should be adjusted downward. Further, the fee application fails to comport with *Mercury's* requirements of submitting billing records, rather than summaries.

## I. THE *CY PRES* PROVISION IN THE SETTLEMENT FAILS TO ADHERE TO ESSENTIAL *CY PRES* PRINCIPLES.

The concept of *cy pres* or "fluid recovery" began in the context of charitable trusts where the court would modify a trust in situations where the testator's original intent could not be carried out. Courts would only take such action to the extent that the testator's money or property was put to the next best, or most similar, use. *S.E.C. v. Bear, Stearns & Co. Inc.*, 626 F. Supp 2d 402, 414 (S.D.N.Y. 2009). Today, courts utilize the *cy pres* doctrine in similar fashion in the class action context; namely, to put remaining monies from a class action settlement fund (that cannot be distributed to class members - the intended beneficiaries) to the next best use. Ordinarily, this next best use is something akin to a charity dealing with the issue in the lawsuit. The Court has a duty to make sure that the *cy pres* beneficiaries are

truly the next best substitute for payment to the class members themselves: "the purpose of *cy pres* distribution is to put the unclaimed funds to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Masters v. Wilhelmina Model Agency,* 473 F.3d 423, 436 (2d Cir. 2007).

The *cy pres* component of class action settlements has the possibility to "turn courts into a grant giving institutions doling out funds to hospitals, legal services organizations, law schools, and other charities." *Bear, Stearns, supra,* 626 F.Supp.2d at 414. This court should try to avoid approving beneficiaries that may not be in the best interest of the class. *See id.* at 415-16. The chosen charity should further the purposes of the underlying litigation in order to benefit the silent class members whose claims will have been extinguished. *Lessard v. City of Allen Park,* 470 F. Supp. 2d 781, 782-83 (E.D. Mich. 2007).

Here, settling parties have set up a *cy pres* scheme which has little, if anything, to do with the initial complaint and issues encompassed by this action. The harm complained of includes intrusion of privacy, and receiving unwanted solicitations. The six designated charities bear no reasonable relation to the harm suffered by the class, and therefore are inappropriate designees. Lawsuits and settlement funds are not created to simply award money to any worthy cause. Rather, the purpose of the *cy pres* award is clear – this money must be donated to the "next best" thing.

Other TCPA cases have solved the *cy pres* issue by donating their contributory funds to privacy-related organizations that promote education and consumer protection. These non-profit entities are more logically related to the purposes of this lawsuit and should have been considered.

## II. THERE IS NO INFORMATION REGARDING THE BENEFIT THE CLASS MEMBERS WILL RECEIVE, PRECLUDING ANY REASONABLE EVALUATION OF THE FAIRNESS OF THE SETTLEMENT TO THE CLASS

The Class Notice provides the following information regarding the benefits available to each class member: "The amount of your exact payment cannot be calculated at this time." Notice at 4, ¶8.

OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

However, this is *prima facie* unfair to expect class members to sign off on a settlement, without any estimate of how much to expect.

Here is what class members do know: There is a maximum amount of money of $12.2 million, of which the attorneys will take perhaps 25%. This leaves approximately $9 million for the class. However, importantly, there is no information in the settlement agreement or the notice regarding how much the administration of the fund will be, or whether there is a ceiling. Since there is no ceiling specified, it can be assumed that there is not one. Examination of relevant pleadings and documents indicates that this may be a complicated and expensive settlement to administer, determining which class each claimant belongs to, and how much money is left in that class.

The notice also provides that there are approximately 24 million class members in the LeadClick class, for whom a $10 million fund was created. which had $10 million to start with (minus attorneys' fees and administration). Class members are also informed that there are approximately 47 million B2Mobile class members, for whom a $2.2 million fund was created. (Decl. of Andrews in Support of Motion for Preliminary Approval, ¶4, Doc. 121-2) So, the class consists of approximately 70 million claimants, for an omnibus fund of less than $9 million. While this Objector cannot quarrel with the amount of money made available by Defendants' insurers, or Defendants' financial condition, he does quarrel with the lack of analysis in which Class Counsel's experts could predict a claim rate and payout estimate. If there is a claim rate of 10%, which may be high, this leaves 7 million claimants for less than $9 million, which results in a pro rata payout of about one dollar. If there is a 1% claim rate, it appears each claimant would get about $10.

With these figures (not provided by Class Counsel but deducible from information in the Settlement), there are no circumstances under which any claimant would be eligible for $100. The Notice headlines in bold print the following language: "You could get up to $100 from a class action settlement." This is highly misleading and completely unsupported by the figures provided herein. This is a further reason the settlement appears unfair and unreasonable. The fact is that no one will be eligible to receive any amount even approaching $100, even assuming a 1% claims rate. This misleading notice should be redone and provide more accurate information to the class.

OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

Class Counsel concedes this flaw, highlighting the misleading nature of this Notice, when it states that a claim might be worth less than $5. This is tantamount to a bait and switch tactic: a class member may get $100, but if there are a high number of claimants and the class member is entitled to only a $5 claim, then the class members claim will be donated to a charity of his choice. The extent to which the flawed *cy pres* plan is detailed suggests that settling parties knew that there would be just enough claims that this contingency needed to be developed. It also suggests that the $100 figure is pure fiction.

Because of the high likelihood of a substantial *cy pres* payout rather than money to the class, the settlement needs to be reassessed by the Court not as a cash payout to the class, but as virtually an all *cy pres* settlement requiring higher scrutiny and appropriate application to relevant charities.

### III. THE REQUIREMENTS FOR OBJECTING ARE ONEROUS AND UNREASONABLE, IN VIOLATION OF RULE 23

The requirements for making an objection, as stated in the Settlement Agreement, appear reasonable, and consistent with the information required to make a claim. An objector, as recited in Section 4.4 on page 25 of the Settlement Agreement, must provide his name and address, his cell number, state that he is a member of the LeadClick or B2Mobile class, and state whether he intends to appear at the fairness hearing. These requirements, curiously, are augmented in the Notice circulated to the class, in which an objecting class member must also now magically remember when he received the text and from whom. These additional requirements create an insurmountable hurdle, crushing the right of any class member to object, in violation of Rule 23, which provides exactly that right.

Class Counsel has admitted that "the identity of the sender was not facially apparent." Motion in Support of Attorneys' Fees at 2 (Doc. 127); Decl. of Andrews, ¶3. If it was not facially apparent to Class Counsel, it is not facially apparent to a class member, who received unsolicited texts over a class period of three and a half years.

Moreover, all settling parties already have compiled a list of eligible class members, which can easily be cross-checked with the objecting class member's cell number: Through confirmatory discovery, they identified each member of the class through telephone numbers. Motion in Support of Attorneys' Fees at 8; Decl. of Andrews, ¶15. Accordingly, Class Counsel already has the information it

supposedly wants an objector to provide: proof that he is truly a class member. To require this additional information can only be for the improper purpose of suppressing the right to object.

Congress protected the right to object in Rule 23, because

> It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would. . . . Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement. . . . Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative. . . . **Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally.** From conflicting points of view come clearer thinking.

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412-13 (E.D. Wis. 2002)(emphasis added). For these reasons, suppressing the ability to make an objection by requiring information admittedly difficult to obtain is simply this: <u>wrong</u>. If there is any doubt about Mr. Cope's status as a class member with standing to make this objection, Settling Parties can simply check the database they have already compiled.

This Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the proposed Settlement Agreement, identifying problems with the proposed Settlement Agreement, and presenting substantial and workable solutions.

### IV. THE RELIANCE UPON THE MEDIATOR'S OPINION REGARDING THE FAIRNESS OF THE SETTLEMENT, AND THE LODGING OF THE MEDIATOR'S DECLARATION REGARDING THE EVENTS OF THE MEDIATION, IS IMPROPER AND A VIOLATION OF FEDERAL RULE OF EVIDENCE 408.

Class Counsel relies upon the opinion of esteemed mediator Green in support of its position that the settlement is fair and reasonable. Moreover, Professor Green submits his own declaration, not stating merely that it was conducted at arm's-length and represents a reasonable resolution, but he also

provides details regarding the **conduct** and **content** of the mediation. Professor Green's opinions regarding the settlement and Class Counsels' request for fees and costs is improper and should be struck or at least ignored in their entirety. Injecting mediators into the judicial examination and approval process taints the process with a *biased* opinion regarding fairness or reasonableness, by someone who is supposed to be, by definition, a *neutral*.

These opinions were clearly formed as a direct result of his involvement in mediation. As such, the opinions are inadmissible under Federal Rules of Evidence, Rule 408(a).

### V. THE ATTORNEYS' FEE APPLICATION APPEARS UNREASONABLE BASED UPON THE LACK OF BENEFITS AVAILABLE TO THE CLASS, AND IT FAILS TO COMPLY WITH THE MERCURY DECISION, WHICH REJECTED SUBMISSIONS OF MERE SUMMARIES.

A. <u>Class Counsel's Request For 25% Of The Common Fund Appears High, When Viewed In Light Of The Benefits The Class Is Eligible To Receive.</u>

In its fee application, Class Counsel admits that the results obtained for the class is the "single clearest factor" to be weighed when determining a reasonable attorneys' fee. Motion for Fees at 11. This Objector agrees. This Objector disagrees that the class benefits are an excellent result, especially since there has been no estimate of what those benefits even are. It appears that there will be no monetary distribution to the class whatsoever, despite the illusory promise of a $100 claim, when at a 10% strike rate, each claimant's share would be forfeited to *cy pres*. Although there was perhaps no additional money available for this 70-million-strong class, the results obtained for them, at approximately $1 each, can hardly be described as "excellent."

Given the paucity of funds available to the class, perhaps this is an appropriate situation for adjusting the "benchmark" of 25% downward, to ensure that additional funds are available to the class. This is especially so, given that the lodestar is $1.1 million. If the class funds are this limited, perhaps the lodestar approach is the proper method to apply. And given the limited results available to

the class, for whom Class Counsel and the Court act as fiduciaries, it also appears that no multiplier would be appropriate in this situation.

In this potentially all-*cy pres* settlement based upon the limited funds available, examination of the lodestar with the requested multiplier leads to an absurd result and apparent windfall to Class Counsel. Class Counsel represents that 2500 hours were spent on this matter. Motion for Fees at 11. The request for $3.05 million will result in an hourly rate of $1220 per hour. This does not appear reasonable to this Objector, who stands to be eligible to select a non-related charity of his choice for his $1. Benchmarks aside, settlements must be examined on their own. In THIS case, is it reasonable to award a multiplier, or a standard 25% of the common fund, when compared to the benefits made available to the class? Probably not.

Further, Class Counsel cites Ninth Circuit case *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1008 (9th Cir. 2002), for its proposition that it would be and "abuse of discretion to fail to apply a risk multiplier when their hourly rate does not reflect that risk." Motion for Fees at 15. This cite fails to take into account the recent Supreme Court position on this, which states that hourly rates **customarily** take in that risk, and that multipliers are only appropriate in "rare or extraordinary" circumstances. *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1673 (2010). In this case, the benefits available to the class do not support the application of a multiplier at all.

B. The Ninth Circuit's *Mercury* And *Bluetooth* Decisions Rejected The Use Of Hourly Summaries As Support For A Requested Fee. The Summaries Submitted Therefore Denied Class Members Their Due Opportunity Under *Mercury*.

Class Counsel has failed to submit their time records for examination by the class, an action required under *In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988 (9th Cir. 2010):

> Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with

OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*In re Mercury Interactive*, 618 F.3d 988, 994 (9th Cir. 2010). The language "inquire into the bases for various charges," and "adequately documented and supported" necessarily involves the production of contemporaneous time records; the recent case of *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), specifically rejected the use of summaries to support fee applications as insufficient information. The Supreme Court agrees that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614 (9th Cir. 1993), the court held that <u>time records</u>, not summaries, must be produced, to support class counsel's fee application:

> While the district court did have evidence of Intel's hours expended and its customary fees, the court made no findings that the hours expended were reasonable and that the hourly rates were customary. The order merely awarded the fees without elaboration. **"Such a procedure is inadequate."** *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984). That is particularly true where, as here, the requesting party submits **mere summaries** of hours worked. As Terabyte pointed out to the district court, those summaries alone made it very difficult to ascertain whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours. Terabyte was not required to take Intel's word that every hour was needed and all overlap had been eliminated. While summaries can be used in proper circumstances, the underlying material must be made available. Fed. R. Evid. 1006. Under our adversary system, Terabyte was entitled to see just what was charged and why. What may seem obvious to Intel and to the district court is not obvious to us. That, among other reasons, explains our long-standing insistence upon a proper explanation of any fee award.

6 F.3d at 623 (emphasis added). The court set aside the fee award and remanded it for further consideration. Just as the court noted that the adversary has the right to examine the fee application, the class members are the only adversaries once the parties settle, since the settling parties present only a united front to the court in their effort to finalize their agreement: "Class Counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." *Great Neck, supra*, 212 F.R.D. at 412.

OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

Due to these considerations, the fee application fails to comport with Ninth Circuit requirements regarding adequate support for a fee request. This Objector suggests that the time records be released consistent with this case law for examination by the class, and that a new fairness or subsequent fee hearing be scheduled in accordance therewith.

## VI. CONCLUSION

The settlement provides no information regarding the benefits available to the class. This essentially precludes approval. The misleading nature of the notice is incredible once the numbers are run. Class Counsel even admits that perhaps no money will be circulated to the class, when it reveals its elaborate "pick a charity" *cy pres* solution. While each of these charities are worthwhile, they fail to adhere to *cy pres* principles requiring that unclaimed funds (or funds which are too difficult to distribute to the class) be distributed to the "next best" use for the indirect benefit of the class. This is a privacy case. None of the charities bear any resemblance to this purpose. Courts should not be put in the position of public largesse.

The restrictions placed upon objectors are objectively unreasonable and stifle the right to object against Congressional intent. Further, the mediator's opinion should be inadmissible, as his role ended once the mediation concluded.

Due to these factors, the fee request appears high. It may be that the lodestar needs adjustment as well, but this is only a guess, as the time records have not been provided. These multiple flaws in the settlement call for further examination by the Court and possible adjustment to the settlement.

WHEREFORE, This Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

C. Award an incentive fee to this Objector for his service in improving the fairness of the settlement, as well as consider awarding an attorneys' fee to his attorney.

Dated: December 30, 2011     By: ___/s/ Joseph Darrell Palmer___
                                  Joseph Darrell Palmer
                                  Attorney for Objector, Steven Cope

OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2011, I mailed, via U.S. Mail, the foregoing OBJECTION OF STEVEN COPE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR to the following parties:

**COURT**
The Honorable Claudia Wilken
c/o Clerk of the Court
US District Court
1301 Clay Street
Oakland, CA 94612

**CLASS COUNSEL**
Ryan D. Andrews
Edelson McGuire LLC
350 N. La Salle Street, Ste 1300
Chicago, IL 60654

**DEFENSE COUNSEL**
Philip S. McCune
Summit Law Group PLLC
315 Fifth Ave South, Ste 1000
Seattle, WA 98104

Roxanne M. Wilson
Reed Smith LLP
355 S. Grand Ave, Ste 2900
Los Angeles, CA 90071

                         /s/ Joseph Darrell Palmer
                         Joseph Darrell Palmer
                         Attorney for Objector