SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
RYAN D. ANDREWS (*Pro Hac Vice*)
randrews@edelson.com
CHRISTOPHER L. DORE (*Pro Hac Vice*)
cdore@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

ATTORNEYS FOR PLAINTIFF
AND THE CLASSES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER KRAMER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUTOBYTEL, INC., a Delaware corporation, and B2MOBILE, LLC, a California limited liability company, and LEADCLICK MEDIA, INC., a California corporation,<br><br>Defendants. | No. 10-cv-02722-CW<br><br>**PLAINTIFF'S COMBINED OPPOSITION AND MOTION TO STRIKE OBJECTIONS OF STEVEN COPE AND SNIDER-CANNATA INTERESTS, LLC**<br><br>Location: Courtroom 2, 4th Floor<br>1301 Clay Street<br>Oakland, CA 94612-5212<br>Date: January 26, 2012<br>Time: 2:00 p.m.<br><br>Honorable Claudia A. Wilken |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     PROFESSIONAL-OBJECTORS DARRELL PALMER AND
        SAM CANNATA ................................................................................................ 1

        A.      Joseph Darrell Palmer ............................................................................ 2

        B.      Sam Cannata ............................................................................................ 3

III.    THE OBJECTIONS OF STEVEN COPE AND SNIDER-CANNATA
        SHOULD BE STRICKEN BECAUSE THEY ARE NOT MEMBERS
        OF EITHER CLASS AND THEREFORE DO NOT HAVE STANDING TO
        OBJECT TO THE SETTLEMENT ................................................................... 5

IV.     STEVEN COPE'S OBJECTIONS LACK MERIT ............................................. 7

        A.      The *Cy Pres* Recipients are Appropriately Related to the
                Classes' Interests .................................................................................... 8

        B.      Class Notice Provides Sufficient Information About the Value
                Class Members Can Receive .................................................................... 9

        C.      The Requirements to File an Objection are not Onerous ...................... 11

        D.      Professor Green's Declaration is Appropriate and Admissible .............. 12

        E.      Class Counsel's Attorneys' Fee Application is Reasonable and in
                Accord with Ninth Circuit Law .............................................................. 14

                1.      *Cope Offers No Justification for Deviation From the*
                        *25% Benchmark* ........................................................................... 14

                2.      *Summaries of Work Performed Are Sufficient to Justify*
                        *Class Counsel's Fee Request* ....................................................... 15

V.      SNIDER-CANNATA'S OBJECTIONS ARE WITHOUT MERIT ................... 17

        A.      Cannata Misunderstands the Claims Process ........................................ 18

        B.      Settlement Administration and Notice Costs are a Benefit to the
                Class and Properly Included in the Settlement Fund ............................. 19

        C.      The Settlement Provides for Strong Injunctive Relief That Need
                Not be "Valued" ..................................................................................... 22

        D.      *Cy Pres* .................................................................................................. 23

        E.      The "Clear Sailing" Provision is Not Improper .................................... 24

VI.     CONCLUSION ................................................................................................. 25

1

2

**TABLE OF AUTHORITIES**

<u>**U.S. Supreme Court Cases**</u>

3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).................................................................. 5

4

*Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010)........................................................... 15

5

<u>**U.S. Appellate Court Cases**</u>

6

*CLRB Hanson Indus., LLC v. Weiss & Assoc., PC*, (09-17380) 2012 WL 20539
    (9th Cir. Jan. 5, 2012)........................................................................................................ 10, 17

7

8

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
    Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007)............................................................ 5

9

*Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 479 (5th Cir. 2007) ........................................ 5

10

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ..................................... 17

11

*Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989)..................................................................... 5

12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................................... 14

13

*Hayes v. Arthur Young & Co.*, 1994 WL 463493 (9th Cir. 1994) ............................................. 23

14

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...................... *passim*

15

*In re Cendant Corp. Litig.*. 264 F.3d 201 (3d Cir. 2001) ............................................................ 9

16

*In re Rite Aid Corp. Sec Litig.*, 396 F.3d 294 (3d Cir. 2005)..................................................... 17

17

*Knisley v. Network Assoc., Inc.*, 312 F.3d 1123 (9th Cir. 2002) ................................................ 7

18

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) .............................................. 10

19

*Nachshin v. AOL, LLC*, 2011 WL 5839610 (9th Cir. 2011) ...................................................... 23

20

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .................................. 14

21

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................................... 10

22

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ...................... 14

23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)............................................................... 20, 21

24

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................................ 10

25

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..................................................... 15

26

*Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997).................................... 21

27

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ....................................... 5

28

**U.S. District Court Cases**

*Arutyun Marsikian v. Mercedes-Benz USA, LLC et al* (08-cv-04876)
(C.D. Cal.) ........................................................................................................ 4

*Brailsford v. Jackson Hewitt Inc.*, (C 06 00700 CW) 2007 WL 1302978
(N.D. Cal. May 3, 2007) .................................................................................. 13

*Braud v. Transp. Serv. Co. of Illinois*, (05-1898) 2010 WL 3283398
(E.D. La. Aug. 17, 2010) ................................................................................... 5

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ........................................ 9

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010) .............................. 11

*Gemelas v. Dannon Co.*, (08-CV-236) (N.D. Ohio) ...................................................... 3

*Gittin v. KCI USA, Inc.*, 09-CV-05843 RS, 2011 WL 1467360
(N.D. Cal. Apr. 12, 2011) ................................................................................ 15

*Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011) .............................. 21, 24

*In re Broadcom Corp. Class Action Litig.*, (CV-06-5036-R) (C.D. Cal.) ......................... 3

*In re Dell Sec. Litig.*, No. A- 06-CA-726-SS, 2010 WL 2371834
(W.D. Tex. June 11, 2010) ................................................................................. 3

*In re: Google Buzz Privacy Litigation* (10-cv-00672) (N.D. Cal.) ................................. 3

*In re Herley Indus., Inc. Sec. Litig.*, Case No. 06-CV-2596 (JRS) (E.D. Pa. 2010) ...................... 2

*In re HP Inkjet Printer Litig.*, No. 05-03580 (N.D. Cal. 2011) .................................... 4

*In re Initial Public Offering Sec. Litig.*, Case No. 21 MC 92 (SAS) (S.D.N.Y. 2009) ................... 2

*In re: Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*,
No. 09-cv-7670 (N.D. Ill. Nov. 30, 2011) ....................................................... 20

*In re Lawnmower Engine Horsepower Mktg. & Sales Practice Litig.*,
No. 08-MD-01999 (E.D. Wis. 2010) ................................................................. 2

*In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005) ............................ 11

*In re Mercury Securities Litigation*, (05-cv-03395-JF) (N.D. Cal.) ....................... 15, 16

*In re MoneyGram Int'l, Inc. Sec. Litig.*, No. 08-CV-883 (D. Minn. 2010) ............................... 2

*In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392 (N.D. Ga. 2001) ....................... 8

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201
(N.D. Cal. Nov. 26, 2007) ............................................................................... 16

*In re Oracle Securities Litigation*, 131 F.R.D. 688 (N.D. Cal. 1990) ........................... 25

*In re Quantcast Advertising Cookie Litigation* (10-cv-05484) (C.D. Cal.) ..................... 4

*In re: Static Random Access Memory (SRAM) Antitrust Litigation*,
(07-md-01819-CW) (N.D. Cal. Sept. 14, 2011)........................................................ 2, 3, 6

*Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355 (S.D.N.Y. 1999) ........................................ 9

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................ 20

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001)................................ 11, 19

*Marsikyan v. Mercedes-Benz, USA, LLC*, No. 08-04876
(C.D. Cal. May 17, 2010)................................................................................ 4

*Masters v. Lowe's Home Center*, No. 3:09-cv-02555 (S.D. Ill. July 14, 2011)............................ 4

*Ori v. Fifth Third Bank et al* (12-mc-00003-DAP) (N.D. Ohio. Jan. 6, 2012) ............................ 4

*Rodriguez v. West Publ'g Corp.*, No. 05-CV-3222 R (MCx), 2007 WL 2827379
(C.D. Cal. Sept. 10, 2007) ................................................................................ 2

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021
(N.D. Cal. 1999)................................................................................ 5, 11

*Schulte v. Fifth Third Bank*, 09-CV-6655, 2011 WL 3269340
(N.D. Ill. July 29, 2011) ................................................................................ 4

*Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000)................................ 2

*Sullivan v. Kelly Services, Inc.*, (CV 08-03893-CW) (N.D. Cal. Aug 12, 2011) ........................ 3

*Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, 827 F. Supp. 477 (N.D. Ill. 1993) ............... 8

*Tarlecki v. bebe Stores, Inc.*, 2009 WL 3720872 (N.D. Cal. Nov. 9, 2009) ................................ 5

*Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003)............................................ 19

*The Authors Guild, Inc. v. Google, Inc.*, No. 05 CV 8136 (S.D.N.Y. 2010) ............................ 4

*Young v. Polo Retail, LLC*, C 02 4546 VRW, 2007 WL 951821
(N.D. Cal. Mar. 28, 2007) ................................................................................ 23

*Williams v. Nat. Sec. Ins. Co.*, 237 F.R.D. 685 (M.D. Al. 2006) ................................ 23

**Rules**

Fed. R. Civ. P. 23 ................................................................................ *passim*

**Other Authority**

Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center,
*Managing Class Action Litigation: A Pocket Guide for Judges* (2005) ............................ 2

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ................................................ 5

NEWBERG ON CLASS ACTIONS (3d ed. 1992)................................................ 9

1   **I.      INTRODUCTION**

2           Federal Rule 23 rightly affords class members the opportunity to present their objections to

3   the terms of class action settlements that affect their interests and such objectors can, and in many

4   instances do, play a valuable adversarial role in assisting courts and counsel in considering

5   unintended flaws in the fairness, adequacy and reasonableness of proposed settlements.  However,

6   objectors Snider-Cannata Interests LLC ("Snider-Cannata") and Steven Cope—and more

7   accurately, their attorneys, Sam Cannata and Joseph Darrell Palmer—play no such role nor add

8   any such value here.  Mr. Palmer and Mr. Cannata have each submitted scores of meritless

9   objections to class action settlements designed not to improve those settlements for the benefit of

10  class members, but rather to threaten to delay providing relief to the class by appealing and then

11  extracting a payday at the expense of class members.

12          While both objections filed by Mr. Palmer and Mr. Cannata lack substantive merit, what is

13  shocking here is that neither of their purported clients, Snider-Cannata or Cope, are actually

14  members of either the B2Mobile Class or the LeadClick Auto Class.  As non-class members they

15  have no standing to take part in this litigation, no standing to object, and no standing to appeal,

16  and their objections should thus be stricken.  When Class Counsel informed Mr. Cannata that

17  Snider-Cannata was not a class member, he quickly sought to withdraw his objection, which the

18  Court approved.  However, when Class Counsel informed Mr. Palmer that his "client" was

19  similarly not a member of either class and provided a declaration from Defendant B2Mobile's

20  Chief Technology Officer ("CTO") unequivocally showing that Cope is not a class member, Mr.

21  Palmer refused to withdraw the objection despite the sanctionable nature of its continued pursuit.

22          Perhaps the strongest indication of the strength of the Settlement is the weakness of the

23  objections presented by professional-objectors Palmer and Cannata.  Neither Palmer nor Cannata

24  present a single issue with the Settlement or the requested attorneys' fee that calls into question

25  their fairness, reasonableness, or adequacy.  Should the Court not strike both objections outright,

26  their substance lacks any semblance of merit and should therefore be overruled.

27  **II.     PROFESSIONAL-OBJECTORS DARRELL PALMER AND SAM CANNATA**

28          Mr. Palmer and Mr. Cannata are two attorneys that make a living exploiting the right to

object to class action settlements by filing objections and subsequent appeals for the sole purpose of extorting a pay-off.  The Federal Judicial Center has warned courts to "[w]atch out … 'for canned objections filed by professional objectors who seek out class actions to simply extract a fee for lodging generic, unhelpful protests.'"  Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 11 (2005) (quoting *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000)).  Courts are further cautioned to be "wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings." *Id.* at 24.2.  This is precisely the situation with the Objectors here.

### A.   Joseph Darrell Palmer

This Court is not unfamiliar with Mr. Palmer and his willingness to proceed with meritless objections. Mr. Palmer has objected to several cases in this Court; however, these are just a fraction of the no less than thirty objections he has made to class action settlements in recent years, utilizing himself, relatives, and other individuals as "clients." *See In re: Static Random Access Memory (SRAM) Antitrust Litigation*, (07-md-01819-CW) (Dkt. 1386-2) (N.D. Cal. Sept. 14, 2011) (providing a comprehensive chart of Mr. Palmer's objections, his clients, and his utter lack of results of obtained, a true and accurate copy of which is attached at Exhibit 1.)  Amazingly, the cataloging of Mr. Palmer's objections included in the attached chart is not inclusive of the totality of his serial objecting.[1]  In *In re SRAM*, this Court issued a compelling order after Mr. Palmer's

---

[1] *Hartless v. Clorox Company*, (06-cv-02705-CAB) (S.D. Cal.); *In re Mercury Securities Litigation*, (05-cv-03395-JF) (N.D. Cal.); *Rodriguez v. West Publ'g Corp.*, No. 05-CV-3222 R (MCx), 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) (objections overruled, court found objectors added nothing to settlement); *In re Dell Sec. Litig.*, No. A- 06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) (Mr. Palmer found in violation of the local rules for filing without being admitted by the court); *In re Lawnmower Engine Horsepower Mktg. & Sales Practice Litig.*, No. 08-MD-01999 (E.D. Wis. 2010) (court overruled objections and required $80,000 bond for appeal); *In re MoneyGram Int'l, Inc. Sec. Litig.* (D. Minn. 2010): *In re Initial Public Offering Sec. Litig.*, Case No. 21 MC 92 (SAS) (S.D.N.Y. 2009) (court noted Palmer was professional objector and objection overruled); *The Authors Guild, Inc. v. Google, Inc.*, No. 05 CV 8136 (S.D.N.Y. 2010); *In re Herley Indus., Inc. Sec. Litig.*, Case No. 06-CV-2596 (JRS) (E.D. Pa. 2010) (overruling objection in its entirety and requiring appeal bond).

1     client refused to appear for a noticed deposition, after which Mr. Palmer's client again refused to

2     sit for a deposition or produce any requested documents in violation of the Court's order. *In re:*

3     *SRAM Antitrust Litig.*, (Dkts. 1393 & 1407) (07-md-01819-CW).

4         Additionally in this Court, Mr. Palmer recently objected to a settlement, but once the

5     plaintiff there attempted to depose the objector, Mr. Palmer promptly withdrew his objection. *See*

6     *Sullivan v. Kelly Services*, *Inc.*, (CV 08-03893-CW) (N.D. Cal. Aug 12, 2011).  Mr. Palmer has, in

7     past cases, refused to respond to counsel, refused to have his client sit for depositions or produce

8     documents when his motives or standing has been questioned, acted in violation of court orders,

9     acted in violation of local rules, and appealed an order after the court found his objector had no

10    standing and refused to post an appellate bond as ordered. *See, e.g., Sullivan*, (CV 08-03893-

11    CW); *Hartless*, (06-cv-02705-CAB); *In re Mercury Securities Litigation*, (05-cv-03395-JF); *In re*

12    *Broadcom Corp. Class Action Litig.*, (CV-06-5036-R) (C.D. Cal.); *In re Dell Sec. Litig.*, (A-06-

13    CA-726-SS).

14        Mr. Palmer is not seeking to improve this Settlement. Instead, he is embarking on his

15    normal pattern of extortion: file a baseless objection he knows will be overturned and then file an

16    appeal to maximize leverage on the parties to the settlement.  Mr. Palmer has had at least twelve

17    cases "voluntarily dismissed" on appeal, which, more than likely, means he was successful in

18    leveraging the appeal into a personal payment.

19        As it pertains to Mr. Cope, this case represents his third objection with Mr. Palmer. *See In*

20    *re: Google Buzz Privacy Litigation* (10-cv-00672) (Dkt. 79) (N.D. Cal.) (in which Cope appealed

21    the court's granting of final approval, only to "voluntarily dismiss" the appeal within four

22    months); *Gemelas v. Dannon Co.*, (08-CV-236) (N.D. Ohio) (where the Judge observed, "The

23    only objections to the settlement were lodged by what now appear to be 'serial objectors.'")

24        **B.**     **Sam Cannata**

25        Although the withdrawal of Sinder-Cannata's "objection" has been approved by the Court

26    (dkt. 134), Plaintiff nevertheless deems it prudent to substantively to demonstrate the blatant error

27    of Mr. Cannata's objections.  Mr. Cannata has objected to at least ten other class action

28    settlements in federal court in the past two years, whether personally, as an attorney for his own

1    business entities, or as an attorney for family member clients.  In several of these cases, his

2    objections were also withdrawn.  In at least one case, Mr. Cannata withdrew his objection (on

3    behalf of Sam A. Cannata) after Class Counsel agreed to reduce their request for expenses by

4    $55,000 and give that money to Mr. Cannata and his associates.  *In re Vytorin/Zetia Mktg. Sales*

5    *Practices*, No. 08-285, MDL No. 1938 (D. N.J. 2010).  None of Mr. Cannata's objections in these

6    cases have been sustained, and courts have explicitly rejected several.[2]

7         Mr. Cannata's disreputable behavior has continued in connection with his objection to this

8    Settlement.  While Mr. Cannata claims that Snider-Cannata owns the cell phone number that he

9    falsely stated received unauthorized text messages from Defendants, he has signed other federal

10   court filings indicating that the number is in fact his personal cell phone number.[3]  In fact, the

11   phone number at issue here appears as Mr. Cannata's law firm phone number on the docket of an

12   action filed *since* Mr. Cannata filed the present objection.  *See Ori v. Fifth Third Bank et al* (12-

13   mc-00003-DAP) (N.D. Ohio. Jan. 6, 2012).  It is entirely unclear why Mr. Cannata would claim

14   that his personal cell phone number, which he has also represented is associated with other

15   businesses, is actually an asset owned exclusively by Snider-Cannata Interests LLC.[4]  Such

16   misstatements are unfortunately common from Mr. Cannata, and they are indicative of his

17

18   _____

19   [2] *See In re: Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*, No. 09-cv-
     7670 (N.D. Ill. Nov. 30, 2011) (expressly rejecting Cannata objection); *Hartless v. Clorox Co.*,
20   273 F.R.D. 630, 638 (S.D. Cal. 2011); *Masters v. Lowe's Home Center*, No. 3:09-cv-02555. Dkt.
     63 (S.D. Ill. July 14, 2011) (finding objection to be "without merit"); *Schulte v. Fifth Third Bank*,
21   09-CV-6655, 2011 WL 3269340, at *17 (N.D. Ill. July 29, 2011); *Marsikyan v. Mercedes-Benz,
     USA, LLC*, No. 08-04876, Dkt. 124 (C.D. Cal. May 17, 2010); *In re HP Inkjet Printer Litig.*, No.
22   05-03580, Dkt. 310 (N.D. Cal. 2011) (denying Cannata fee application).
     [3] *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011); *In re Quantcast
23   Advertising Cookie Litigation* (10-cv-05484) (C.D. Cal.); *Arutyun Marsikian v. Mercedes-Benz
     USA, LLC et al* (08-cv-04876) (C.D. Cal.).
24   [4] Although Mr. Cannata withdrew his objection in the face of proof of his client's non-
     membership in either class, it is questionable as to whether Snider-Cannata was in fact the owner
25   (216) 214-0796.  A paid search of two public databases listing cellular telephone records reveals
     ownership listed as "Sam Cannata" and "Cannata Snider," neither of which appear to match
26   Snider-Cannata Interests LLC.  (Andrews Decl. ¶ 7.)  Moreover, Mr. Cannata has listed this same
     cell phone number as a contact number for other unrelated business entities apparently owned by
27   Mr. Cannata, including a paint and coating manufacturing business ("Cansto Coatings Ltd").

28

approach as a serial objector.

### III.   THE OBJECTIONS OF STEVEN COPE AND SNIDER-CANNATA SHOULD BE STRICKEN BECAUSE THEY ARE NOT MEMBERS OF EITHER CLASS AND THEREFORE DO NOT HAVE STANDING TO OBJECT TO THE SETTLEMENT

As a fundamental threshold matter, because neither Cope nor Snider-Cannata are members of the B2Mobile Class or the LeadClick Auto Class, they lack standing to object and as such their objections should be stricken.  It is well-settled that only class members have standing to object to a proposed class action settlement.  *See e.g. Tarlecki v. bebe Stores, Inc.*, 2009 WL 3720872, at *1, n.1 (N.D. Cal. Nov. 9, 2009); *Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 479, 580 (5th Cir. 2007); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).  A non-class member does not have an affected interest in the classes' claims so as to assert objections on their behalf.  *See San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("non class members have no standing to object"); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007); 4 NEWBERG ON CLASS ACTIONS, §13:69 (4th ed. 2002).  In the framework of Article III standing, the "particularized, traceable, remediable injury necessary for an objector's standing arises from his claim on his share" of a settlement's benefits as a class member.  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1326 (9th Cir. 1999).  Non-class member objectors, however, necessarily have not suffered the injury that is being redressed by the class action settlement and thus lacks standing to object.

It is claimants' burden to demonstrate that they have standing—a burden neither objector here has met.  *Braud v. Transp. Serv. Co. of Illinois*, (05-1898) 2010 WL 3283398, *2 (E.D. La. Aug. 17, 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Feder v. Elec. Data Sys. Corp.*, 248 F. Appx 579, 581 (5th Cir. 2007) (class members bear the burden to show standing to object).  To be a member of either the B2Mobile Class or the LeadClick Auto Class a consumer must have received a text message on their cell phone covered by the Settlement from the period of January 1, 2008 until July 29, 2011.  (Dkt. 125, ¶ 5, defining limits of class membership.)  Further, the order granting preliminary approval clearly stated that "[t]o be valid, the objection must set forth his/her full name, current address, telephone number, state that he or

she is a member of the LeadClick Auto Class or the B2Mobile Class, [and] provide the cellular

phone number that received a text message from Short Code 77893 or any text message containing

a B2Mobile Website."  (Dkt. 125, ¶ 16.)  The Notice echoes this requirement.  (Dkt. 121-1.)  As

required by the Settlement (Dkt. 121-1 §4.1(a)-(b)), B2Mobile provided Rust Consulting and

Class Counsel with a complete list of the approximately 47 million cellular phone numbers

comprising those persons eligible to participate in the Settlement as members of the B2Mobile

Class or LeadClick Auto Class.  (Declaration of Ryan D. Andrews, ¶ 3, attached hereto as Exhibit

2; Declaration of Tore Hodne (Rust Consulting, Inc.) ¶ 8, attached hereto as Exhibit 3.)  The cell

phone numbers provided by Cope and Cannata both do not appear on this list.

Mr. Palmer's objection states that the "cell phone number on which [Mr. Cope] received

unsolicited text messages from Defendants ends in 8488.  Objector affirms that he received a text

message from number 77893 of the kind described in the notice of class action settlement and in

the Settlement Agreement."  (Dkt. 128, pgs. 1-2.)  Upon receipt of the objection, Class Counsel

contacted Mr. Palmer and requested that he provide Mr. Cope's complete cell phone number, as he

was required to do under the terms of the Notice and the Preliminary Approval Order.  (Andrews

Decl. ¶ 4.)  Five days later, Mr. Palmer's paralegal stated that Mr. Cope's complete cell phone

number is 760-579-8488.  (Andrews Decl. ¶ 5.)   Upon receiving the phone number, Class

Counsel, as well as Defendant B2Mobile, performed a comprehensive search of the class member

database to determine if Cope's cell phone number appeared on the list of members of the

B2Mobile Class or the LeadClick Auto Class.  (Andrews Decl. ¶¶ 6, 8.)  Cope's cell phone

number was not in the database and Class Counsel promptly presented Mr. Palmer with this

information, including a declaration from B2Mobile confirming the same, and requested that he

withdraw his objection.  (Andrews Decl. ¶ 8.)  Mr. Palmer, through his colleague Janine

Menhennet, has nonetheless indicated his intent to sanctionably proceed with Cope's meritless

objection.[5]  Nevertheless, Cope is not a member of either class and his objections to the Settlement

---

[5] Notably, this is not the first time Mr. Palmer has forced his way onto this Court an objector
who lacks standing.  *See In re: Static Random Access Memory (SRAM) Antitrust Litigation*, (07-md-
(footnote continued)

1  should be stricken.[6]

2      The situation with the Snider-Cannata was nearly identical, except that Mr. Cannata chose

3  to withdraw his objection when confronted with proof that his "client" was not a member of either

4  class.  In its objection, Snider-Cannata stated that that unauthorized text messages covered by the

5  settlement were received by cell phone number (216) 214-0796.  (Dkt. 129.)  When Class Counsel

6  presented Mr. Cannata with the Declaration of Kanwar Dhaliwal, CTO of B2Mobile, which

7  demonstrated that this representation was false and that Snider-Cannata Interests was neither a

8  member of the B2Mobile Class nor the LeadClick Auto Class, Mr. Cannata withdrew his

9  objection.  (*See* Dkt. 132.)  Although the Court has approved the withdrawal of Mr. Cannata's

10  objection (Dkt. 134), Snider-Cannata never had standing to file the objection in the first instance

11  and the Court should therefore order it stricken.

12  **IV.    STEVEN COPE'S OBJECTIONS LACK MERIT**

13      Although the Court need not address the objection of non-class member Cope, were he a

14  class member, his "substantive" claims of fault with the Settlement lack any merit and should be

15  overruled.

16

17  _____

18  01819-CW) (Dkt. 1407) (N.D. Cal. Sept. 14, 2011) (in regards to Mr. Palmer's objection, the Court

19  ruled "[a]ll objections are hereby overruled on the grounds that the objectors have failed to submit
    proof or otherwise establish that they are members of the Class, and they therefore lack standing to
    challenge any fee request.").  *See also In re Mercury Securities Litigation* (05-cv-03395-JF) (Dkt.

20  416) (N.D. Cal.) (in regards to Mr. Palmer's objection, "[b]ecause neither Mr. Delluomo nor the

21  Orloffs submitted a claim in this case, they lacked standing to object to the settlement.) The *In re
    Mercury* court relied on *Knisley v. Network Assoc., Inc.*, 312 F.3d 1123, 1128 (9th Cir. 2002)

22  ("lack of standing should be apparent" for an objector who failed to submit proof of claim) and

23  *Feder*, 248 F. Appx. at 580 (only claimants "have an interest in the settlement funds" because
    "[a]nyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum'

24  of standing.")  Shortly before the court issued its order, Mr. Palmer withdrew his objection.  *In re
    Mercury*, (05-cv-03395-JF) (Dkt. 412).  As was the case in *In Re Mercury*, Cope and Snider-

25  Cannata also lack standing because they have not filed claims, and although the claims period
    remains open, any attempt to file a claim would be rejected because they are not on the class

26  member list.  (Hodne Decl. ¶ 11.).

27      [6] Mr. Palmer has indicated that he intends to appear at the January 26, 2012 Fairness Hearing.
    Before being allowed to present any statement to the Court regarding the Settlement, the Court

28  should require Palmer to demonstrate the standing of his "client" as a member of either class.

A.      The *Cy Pres* Recipients are Appropriately Related to the Classes' Interests

Cope first contends that the Settlement is not fair, reasonable, and adequate because the six Court-approved *cy pres* recipients do not directly relate to the subject matter of the litigation or the interests of class members.  Cope's argument demonstrates his ignorance with the nature of the text messages at issue in relation to the services provided by the potential recipients of *cy pres* from the Settlement.  The subject-matter of the allegedly unauthorized text messages sent by or on behalf of Defendants, as well as the geographic diversity of the nationwide class, guided the selection of the charitable and non-profit *cy pres* recipients.  (Andrews Decl. ¶ 9.)  For instance, text messages were sent promoting the sale of foreclosed homes and were matched with Habitat for Humanity and Fischer House Foundation as charities related to housing assistance.  Additional text messages were sent promoting online education and education loans and were matched with Operation HOPE and Big Brother Big Sister as charities related to educational assistance.  Finally, given the geographic diversity of the approximately 47 million class members, the Parties selected the American Red Cross and National Center for Missing & Exploited Children as charities with broad national appeal.  (Andrews Decl. ¶ 9.)  The *cy pres* recipients thus have an ascertainable relationship with the subject matter of the case and account for the diverse nationwide classes.

Moreover, the interests of the class are being directly promoted by these charitable and non-profit institutions because the Settlement's Claim Form allows the members of the classes to select which entity will receive funds should *cy pres* distribution be required.  (Dkt. 121-1, Ex. B.)  Following the claims period, the Settlement Administrator will distribute any eligible *cy pres* funds in direct proportion to the selections made by class members.  (Dkt. 121-1, §§ 1.14, 1.46, 2.2, 2.3(a).)  Accordingly, class members play a direct and exclusive role in selecting who receives the *cy pres* distributions.  Cope's objection thus lacks merits and should be overruled.

In addition, although Plaintiff believes the *cy pres* recipients are properly related and appropriate, "[c]ourts have expanded the cy pres doctrine to also permit distributions to charitable organizations not directly related to the original claims."  *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D. Ga. 2001) (citing *Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, 827 F. Supp. 477, 478 (N.D. Ill. 1993)) (noting "[i]n recent years, the doctrine

1   appears to have become more flexible.")  While Cope alludes to other supposedly more closely

2   related *cy pres* recipients (without naming a single one),[7] Class Counsel is aware of no charitable

3   organization that seeks to prevent alleged text message spam, and believe that the Parties have

4   chosen the next best options.  *See also Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355, 359 (S.D.N.Y.

5   1999) ("[t]he absence of an obvious cause to support with the funds does not bar a charitable

6   donation"); NEWBERG ON CLASS ACTIONS § 10.24, at 10–60 (3d ed. 1992) ("the court ... may order

7   the residual monies to be distributed to a use completely unrelated to the injured class members,

8   such as to an educational institution, to a recognized charity or public service organization, or to

9   the general treasury of the local or state government.")  Accordingly, Cope's objection to the *cy*

10  *pres* recipients and distribution is thus unwarranted and should be overruled.

11      **B.      Class Notice Provides Sufficient Information About the Value Class Members**

12              **Can Receive**

13          Cope next argues that the Settlement is unfair because the Notice fails to provide class

14  members with information regarding how much they individually can benefit from the Settlement.

15  Cope's argument directly conflicts with the Ninth Circuit's interpretation of Rule 23 and flagrantly

16  misrepresents the plain language of the Notice.[8]  The Ninth Circuit recently made clear that,

---

18      [7] Notably, Cope insinuates that other Telephone Consumer Protection Act cases have disturbed
    *cy pres* funds to "privacy-related organizations" that promote education and consumer protection,
19  and notes that "these non-profit entities" are more "logically related to the purposes of this
    lawsuit."  However, Cope provides *no authority* for this claim and gives *no examples* of
20  alternative *cy pres* recipients.  Without more, Cope's attempt to degrade the present Settlement is
    nothing more than a hollow opinion.  Not insignificantly, the Court was made fully aware of the *cy
21  pres* recipients through Plaintiff's Preliminary Approval Motion, and likewise made aware of the
    proportionate distribution plan.
22
23      [8] Separately, any vagueness in the settlement terms or notice was protected against by
    supplying putative class members other outlets in which to seek additional information, such as a
24  settlement website and phone numbers to call the settlement administrator or Class Counsel
    directly.  *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 302-03 (W.D. Tex. 2007) ("the notice
25  provided in this case informed class members they could obtain additional information about the
    case or the settlement, and copies of the documents, including the proposed settlement and class
26  counsel's application for attorneys' fees, by writing, calling a toll-free telephone number or visiting
    a specific website. Thus, by providing class members an opportunity to have their questions
27  answered or obtain further information or documents, the notice further satisfied due process"); *In
    re Cendant Corp. Litig.*. 264 F.3d 201, 235 (3d Cir. 2001) (finding notice was sufficient where,
28                                                          (footnote continued)

1  contrary to Cope's assertion, class notice need not identify the exact amount of individual

2  recovery:

> Our cases require that a settlement notice "describe [ ] the aggregate amount of the settlement fund and the plan for allocation," *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir.2009), but do not require that such notice allow class members to estimate their individual recovery. *Id.; Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir.1993); *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1177–78 (9th Cir.1977). It is undisputed that the notice in this case specified the aggregate amount of the settlement and described the plan for allocation to the class. The notice met the requirements of Rule 23(e)(1).

8  *CLRB Hanson Indus., LLC v. Weiss & Assoc., PC,* (09-17380) 2012 WL 20539 (9th Cir. Jan. 5,

9  2012).  Here, exactly like *CLRB Hanson,* the Notice and all related documents set forth the

10  "aggregate amount of the settlement fund" as $12.2 million, and a "plan for allocation" whereby

11  consumers who file valid claims will receive as much as $100 and, depending on the total number

12  of valid claims filed, as little as $5.  (Declaration of Shannon R. Wheatman (Kinsella Media, LLC)

13  ¶ 26, attached hereto as Exhibit 4.)  Further, although Cope accurately quotes the Notice's

14  statement that "[t]he amount of your exact payment cannot be calculated at this time"  (Dkt. 128,

15  pg. 3), he studiously ignores the other details that accompany it, including the overall value of the

16  settlement funds ($12.2 million), the $100 limit on claims, statements that the overall class size is

17  approximately 47 million people, and the detailed description of the potential of *pro rata* and *cy*

18  *pres* distributions based on the number of claims.[9]  (Wheatman Decl. ¶¶ 12, 15, 26.)  The Claim

19  Form also described this process in detail.  (Hodne Decl. ¶ 10, Ex. C.)

20       Building on his misunderstanding of the law, Cope attempts to bolster his argument with a

21

22  _____

23  although it could have been clearer on how to object, notice provided the class members with
   phone number and address for obtaining further information).  Both Class Counsel and Rust
   Consulting fielded numerous phone calls from putative class members seeking additional

24  information about the Settlement.  (Andrews Decl. ¶ 13; Hodne Decl. ¶ 11.)

25     [9] Cope, either through willful misstatement or lack attention to the words used in the notice,
   bases his mathematical arguments of inadequacy on a combined B2Mobile Class and LeadClick

26  Auto Class that exceeds 70 million consumers. (Dkt. 128, pg. 4.) Cope, however ignored that
   many LeadClick Auto Class Members, such as the Class Representative, are also B2Mobile Class

27  Members.  The actual class size is clearly stated in the Class Notice as approximately 47 million
   consumers.  (Dkt. 121, Ex. D, 4.)

28

series of calculations he claims show the amount of recovery offered class members is "highly

misleading and completely unsupported." (Dkt. 128, pg. 4.)  Although Cope bases his calculation

on the wrong class size, his argument defeats itself as the inclusion of his predictions demonstrates

that members of the classes had sufficient information to make an informed decision about the

recovery available.  Finally, Cope insinuates that it was improper for the Settlement to recognize

that a certain claim rate could result in a $100 payment to class members while a higher claim rate

would result in a lesser *pro rata* or *cy pres* distribution.  (Dkt. 128, pg. 4-5.)  Not only was this

potential explained to members of the class, such manner of distribution is commonly approved.

*See e.g. Mangone v. First USA Bank*, 206 F.R.D. 222, 225 (S.D. Ill. 2001) (approving *pro rata*

distribution of $28.7 million settlement fund should claims of the 18.5 million member class be

less that the stated $29 per claim); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 87

(D. Mass. 2005) (approving similar *pro rata* distribution based on claims submission).  Therefore,

the value provided to the classes as set forth in the Notice is clear and the objection should be

overruled.

### C.    The Requirements to File an Objection are not Onerous.

Demonstrating his awareness that he was not a class member at the time of filing his

objection, Cope argues that the procedure required for objecting to the Settlement is "onerous" and

creates an "insurmountable hurdle" that "crush[es] the right of any class member to object."  (Dkt.

128, pgs. 5-6.)  The procedure was apparently not so onerous as to prevent Cope from objecting

anyway and his claim is also as overly dramatic as it is incorrect.  Rule 23(e)(5) only requires that

"[a]ny class member may object" to the proposed settlement, making proof of class membership a

necessary burden to impose on those seeking to inject themselves into the Settlement.  *San

Francisco NAACP*, 59 F. Supp. 2d at 1032 (N.D. Cal. 1999); *see also Dewey v. Volkswagen of

Am.*, 728 F. Supp. 2d 546, 581 (D.N.J. 2010) (recognizing that Rule 23(e)(5) requires objectors

comply with certain procedures to ensure they are members of the class).

Here, members of the B2Mobile Class or the LeadClick Auto Class entitled to submit a

claim or file an objection must have received a text message on their cell phone covered by the

Settlement from the period of January 1, 2008 until July 29, 2011.  (*See* Dkt. 125, ¶ 5.)  The

1   requirements placed on those desiring to object to the Settlement merely requests the objector to

2   provide minimal information to insure they have the requisite standing to object: that they

3   received a text message of the type covered by the Settlement, the cell phone number that received

4   the text message, and when that message was received to insure it was within the temporal limit of

5   the class definitions.  (*Id.*; Hodne Decl. ¶ 10, Ex. C.)  Those class members submitting claims

6   must similarly meet this low hurdle; namely, the providing of a cell phone number that received

7   the covered text message and affirming that they are members of either of the classes (they need

8   not specify which class).  (Hodne Decl. ¶ 10, Ex. C.)  For those submitting claims, the temporal

9   element is subsumed in the affirmation that they meet the definition of being a member of one of

10  the classes, the definitions of which are clearly set forth in the Notice.  (*Id.*)

11          Instead of attempting to meet this burden (which he cannot as he is not a class member),

12  Cope objects to it as being too onerous.  Providing one's complete cell phone number and a

13  statement of when the allegedly offending text messages were received is not a difficult task.

14  There is nothing "magical" about Cope making a cursory review of his phone records for receipt

15  of text messages from 77893, easily accessible through his online Verizon Wireless account, or

16  even affirming that he received the text messages during the time period identified in the class

17  definitions (like the false statement made by Snider-Cannata).  Yet, it was a hurdle Cope was

18  unable to meet.  Cope did not provide his complete cell phone number when filing his objection

19  (in an attempt to disguise his lack of standing) and did not state the text messages he claims to

20  have received from Defendants occurred within the stated claims period.  (Dkt. 128, pgs. 1-2.)

21  While these deficiencies alone are sufficient to find his objection non-compliant, when Palmer

22  ultimately gave up his client's cell phone number, it was not surprisingly determined that Cope is

23  not a member of either class.  (Andrews Decl. ¶¶ 5-8.)  As such, his arguments opposing the

24  objection process fail.

25          **D.      Professor Green's Declaration is Appropriate and Admissible**

26          Perhaps the most absurd objection made by Cope is that the Court's consideration of the

27  Declaration of Professor Green as to the lack of collusion in the mediation process is not only

28  improper, but in violation of Federal Rule of Evidence 408(a).  Cope is wrong about the Court's

1   ability to consider the testimony of Prof. Green under Rule 408 or any other standard.  Rule 408

2   prohibits the introduction of evidence, including offers of compromise and specific statements

3   made during the course of settlement to "either to prove or disprove the validity or amount of a

4   disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evd.

5   408.  In fact, Rule 408 specifically states that it does not require exclusion of evidence of

6   settlement negotiations when used for another purpose.  (*Id.*)  This is complemented by the ADR

7   Local Rules for the Northern District of California which govern disclosure of information

8   exchanged in court-ordered mediation, which provide: "(b) Limited Exceptions to Confidentiality.

9   This rule does not prohibit: (1) disclosures as may be stipulated by all parties and the mediator."

10  ADR Local Rule 6-12.  This is exactly what occurred here, and is in no way improper.

11    Professor Green's declaration simply provides his credentials as an expert mediator, a

12  neutral recitation of the *process* followed by the Parties, and the fact that the negotiations were at

13  arms-length.  (Dkt. 127-2.)  Professor Green does not put forth an opinion about the

14  reasonableness or fairness of the terms of the settlement or even the reasonableness of Class

15  Counsel's fee request—his testimony is limited to the non-collusive manner in which those

16  agreements were reached.  (*Id.*)  Moreover, Professor Green provided the declaration with the

17  express permission of each party to this litigation, all of which specifically reviewed and approved

18  the filing to ensure that Professor Green was not revealing or disclosing confidential information.

19  (Andrews Decl. ¶ 10.)   As such, Cope's objections founded on Rule 408 or claimed "bias" are

20  misplaced.

21    Furthermore, court's routinely looks to the testimony of mediators to determine that the

22  process used to reach a given class action settlement was fair and that the parties acted in a non-

23  collusive manner.  *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir.

24  2005) ("[a]ccording to settlement mediator Eric Green, 'the court system and the mediation

25  process worked exactly as they are supposed to work at their best; a consensual resolution was

26  achieved based on full information and honest negotiation between well-represented and evenly

27  balanced parties.' Green Decl. ¶ 12."); *Brailsford v. Jackson Hewitt Inc.*, (C 06 00700 CW) 2007

28  WL 1302978 (N.D. Cal. May 3, 2007) ("The Agreement was facilitated by an experienced

mediator, Edward A. Infante, former Chief Magistrate Judge of the United States District Court for the Northern District of California, who submitted an affidavit attesting to the parties' good faith negotiations, and offering his opinion that the Settlement Agreement is fair and reasonable."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("the court relied on the mediator as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class, an inquiry the court was required to make.").  Accordingly, this Court can and should consider the Declaration of Professor Green and reject the objection of Cope.

E.   **Class Counsel's Attorneys' Fee Application is Reasonable and in Accord with Ninth Circuit Law**

Cope's final set of arguments take issue with the amount of fees being sought by Class Counsel, claiming that an award of 25% of the total combined amount of settlement funds should be lowered and that detailed time records are required to be lodged with the Court in order to support a lodestar cross-check.  As with his other arguments, Cope displays a fundamental misunderstanding of the case law and makes assertions that conflict with his own arguments.

1.   *Cope Offers No Justification for Deviation From the 25% Benchmark*

Cope's first argument is that fees of less than 25% of the combined settlement funds should be awarded based on his claim that there is no value being afforded to the class members under the terms of the Settlement and therefore a lodestar multiplier is inappropriate.  Not only is Cope's argument not supported by the applicable law, it seemingly contradicts his previous assertion that "Objector cannot quarrel with the amount of money made available by Defendants' insurers, or Defendants' financial condition."  (Dkt. 128.)  Nevertheless, the Ninth Circuit has set a well-established "benchmark" fee of 25% in common fund cases, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990)), which it directs should be adjusted upward or downward only in "unusual circumstances."  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Cope hardly presents anything approaching an "unusual circumstance" that would justify departure from the benchmark and his objection should therefore be disregarded.

Quickly abandoning his argument for lowing the benchmark 25%, Cope moves on to claim that allowing for a multiplier on Class Counsel's lodestar cross-check is only appropriate in "rare or extraordinary circumstances." (Dkt. 128, pg. 8.) Cope claims that the Supreme Court's ruling in *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010) supports his argument that a multiplier is improper here. Unfortunately, *Perdue* is inapposite to this case as it arises under Title 42 U.S.C. §1988, the fee shifting provision of the federal civil rights statute. *See Perdue*, 130 S. Ct. at 1676-77. The *Perdue* Court specifically stressed at the outset that it was only considering "the calculation of an attorney's fee, under the federal fee-shifting statutes," and is scrutinized only under that jurisprudence throughout. *Id.* at 1669, 1672. The reason that multipliers of counsels' lodestar are "rare" under the fee-shifting statutes is that the "defendants contemplating the possibility of settlement will have no way to estimate the likelihood of having to pay a potentially huge enhancement," and usually these judgments are paid "in effect by state and local taxpayers," as the defendants in cases arising under §1988 are government entities. *Id.* at 1666-67. Accordingly, *Perdue* is inapplicable to this case and Class Counsel's requested multiplier of 2.69 is squarely in-line with governing precedent. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 n.6 and Appendix (finding multipliers in a survey of class action settlements ranged from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3).

### 2.   *Summaries of Work Performed Are Sufficient to Justify Class Counsel's Fee Request*

Cope's second fee-based argument is that Class Counsel's fee petition is inadequate because it does not contain voluminous line-item billing records. This argument overstates the Ninth Circuit's holdings in *In re Mercury Interactive Corp.* as well as *In re Bluetooth*. (Dkt. 128, pgs. 8-10.) Although Cope quotes from *In re Mercury* at length, the Ninth Circuit's ruling in that case did not address the provision of summaries versus complete billing records, but focused instead on the construction of Rule 23(h), which it determined required "that class members be allowed an opportunity to object to a fee motion prior to the expiration of the class members' opt-out deadline." *Gittin v. KCI USA, Inc.*, 09-CV-05843 RS, 2011 WL 1467360, *1 (N.D. Cal. Apr. 12, 2011) (citing *In re Mercury*, 618 F.3d at 993-94.) In *In re Mercury*, the deadline for objections

1    occurred *prior* to class counsel's filing of its request attorneys' fees, which meant the only

2    information class members had when submitting their objections was the statement in the notice

3    that attorneys' fees would be based on 25% of the $117 million settlement fund.  619 F.3d at 990-

4    91.  The court found this only permitted objectors to make "generalized arguments about the size

5    of the total fee because they were only provided with generalized information," *i.e.* tje statement in

6    the notice that counsel would be seeking a quarter of the total recovery.  *Id.* at 994.  As such, the

7    Ninth Circuit directive, quoted by Cope, that "class members [be allowed] an opportunity

8    thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure

9    they are adequately documented" is adequately accommodated where, as here, the filing of the

10   request for attorneys' fees is made before the objection deadline and includes detailed summaries

11   of the work performed and hours expended.  *Id.*

12        Cope's attempts to support his claimed entitlement to full contemporaneously filed time

13   records by stating that "the recent case of *In re Bluetooh* [ ], specifically rejected the use of

14   summaries to support fee applications as sufficient information."  The *In re Bluetooth* Court held

15   no such thing.  There, the Court found that the district court's approval of fees, based on the

16   lodestar method and having complete time records provided upon request, nonetheless failed to

17   provide an adequate explanation of the result it approved as the Court failed to make a finding as

18   to the reasonable lodestar amount, failed to cross-check the lodestar with the percentage method,

19   and did not consider the success of the litigation.  654 F.3d at 943.

20        Neither of these decisions alters in any way the well-settled manner of seeking an approval

21   of fees in this District.  In submitting a request for fees, "[a]ll that should be required is sworn

22   declarations from the attorney(s) in charge of billing records for the case attesting to (1) the

23   experience and qualifications of the attorneys who worked on the case; (2) those attorneys'

24   customary billing rates during the pendency of the case; and (3) the hours reasonably expended

25   (reduced if necessary in the exercise of professional billing judgment); by those attorneys in

26   prosecuting the case."  *Young v. Polo Retail, LLC*, C 02 4546 VRW, 2007 WL 951821, *6 (N.D.

27   Cal. Mar. 28, 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL

28   4171201, *14 (N.D. Cal. Nov. 26, 2007) (same).  Importantly, following both *In re Mercury* and

1  *In re Bluetooth*, the Ninth Circuit continues to approve percentage based fee awards where class

2  counsel submits detailed summaries of the time expended.  *See CLRB Hanson Indus., LLC*, 2012

3  WL 20539 (in affirming Chief Judge Ware's fee award of $5,000,000 with a lodestar of over $3

4  million supported by declarations and summaries, the Ninth Circuit put its focus on the analysis

5  conducted by the district court, finding "[t]he district court's attorney's fees order was brief, but it

6  referred to Plaintiffs attorneys' substantially uncontradicted evidence and arguments that the

7  requested fees are justified by their work on the case and in line with previous awards in similar

8  cases.")

9        In this case, Class Counsel "adequately documented and supported" its fee petition through

10  detailed declarations listing Class Counsel's total hours, rates, experience, and total fees, including

11  sworn statements that the time records were reviewed for unnecessary or duplicative billing.  This

12  is more than sufficient under the present circumstances.  *See Young,* 2007 WL 951821, at *6.

13  Moreover, because Class Counsel's fee request is based on the common fund created by the

14  Settlement, the fee request is based on "the 25% benchmark standard" regularly applied under

15  Ninth Circuit law, *In re Bluetooth*, 654 F.3d at 945; in this context, Class Counsel's hours are

16  provided for the purpose of a lodestar cross-check and exact calculations are not required.  *Young*,

17  2007 WL 951821, at *6 ("In contrast to the use of the lodestar method as a primary tool for setting

18  a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and

19  review of counsel's hours"); *See also In re Rite Aid Corp. Sec Litig*., 396 F.3d 294, 306 (3d Cir.

20  2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-

21  counting."); *Goldberger v. Integrated Resources, Inc*., 209 F.3d 43, 50 (2d Cir. 2000) ("Of course,

22  where [the lodestar method is] used as a mere cross-check, the hours documented by counsel need

23  not be exhaustively scrutinized .")

24        As such, non-class member Cope's objections to the settlement lack merit, and should they

25  be considered by the Court at all, warrant being overruled in their entirely.

26  **V.    SNIDER-CANNATA'S OBJECTIONS ARE WITHOUT MERIT**

27        As noted above, professional-objector Sam Cannata has withdrawn the objection of his

28  "client," Snider-Cannta Interest, after being presented with proof that he was not a member of

1  either class.  While this may technically relieve both the Court and Class Counsel from addressing

2  the "merit" of his objections, each are refuted below so as to remove any question that the

3  Settlement is anything but fair, reasonable, and adequate.

4          **A.      Cannata Misunderstands the Claims Process**

5          Snider-Cannata first takes issue with the Settlement's claims process, asserting that it

6  creates improper "obstacles" that will deter class members from filing claims.  (Dkt. 129, pgs. 1-

7  2.)  This argument does little more than showcase Mr. Cannata's abject misunderstanding of the

8  streamlined claims procedure, a misunderstanding that could have been avoided had Mr. Cannata

9  taken even a cursory look at the Claim Form attached and readily available on the settlement

10  website.  (*See* Hodne Decl. ¶ 10.)

11          The Parties specifically designed the claims process to avoid placing unnecessary burdens

12  on class members, and created a Claim Form that merely requires those members of either the

13  B2Mobile Class or LeadClick Auto Class to provide the cell phone number that received covered

14  text messages and affirm that they fit within the definitions of the classes.  (*Id.*)  Despite this,

15  Cannata argues that the claims process requires class members to "unearth phone records" to

16  determine whether they are entitled to payment.  (Dkt. 129, pg. 1.)  Again, Cannata ignores the

17  Claim Form, which nowhere requires class members to submit or list any documentation.

18          Next, Cannata invents another obstacle: that class members must determine "with

19  accuracy" whether they are a member of the B2Mobile Class or LeadClick Auto Class.  (Dkt. 129,

20  pg. 2.)  Cannata is wrong again.  Both the online and paper claim forms only require claimants to

21  aver that they are members of *either* class by submitting the Claim Form and confirming that they

22  (1) received one or more text messages from SMS short code 77893 or containing the specific

23  websites; and (2) did not provide their express consent to receive such messages.  (*See* Hodne

24  Decl. ¶¶ 8, 10.)  In short, Cannata's assertions that class members were required to expend any

25  additional effort or provide any further information are simply false.

26          Cannata ultimately argues that the Settlement should dispense with the Claim Form

27  entirely and require that Defendants themselves identify all individuals that are entitled to

28  payments.  This argument has been consistently rejected where, as here, the Parties simply do not

1  have sufficient records to determine the identity of class members other than a list of their cellular

2  phone numbers.  *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 66-67 (S.D.N.Y. 2003)

3  (overruling objection suggesting that defendant identify all eligible class members from its

4  business records because defendant "has no practical means to independently identify from its

5  records every individual entitled to settlement benefits and determine where such individual may

6  now reside"); *Mangone*, 206 F.R.D. at 234 (rejecting objection to claims process in which objector

7  argued that the defendant should be required to determine the identity of class members from its

8  business records because the objection "wrongly assumes that [defendant] keeps records in the

9  ordinary course of its business that would permit" the defendant to identity class members).  Here,

10  the only information in Defendants' possession regarding the identity of potential class members

11  was a list of the cellular phone numbers that were sent the allegedly unauthorized text messages.

12  Accordingly, Cannata's suggestion that Defendants could have determined the identity of all class

13  members entitled to payment without the claims process ignores the realities of this case and is

14  thus without merit.

15      Finally, Cannata argues that class members who received more than one unauthorized text

16  should be entitled to receive multiple settlement payments.  The facial appeal of this argument

17  quickly fades after inquiring into the actual facts of the case.  Given the large number of class

18  members and the limited settlement funds available, the Parties negotiated for a single settlement

19  payment for each class member because it was the most appropriate way to insure that the

20  maximum number of class members could get paid out of the available funds.  Moreover, to the

21  extent that Snider-Cannata or any other purported class member received a disproportionately

22  large number of text messages from Defendants, Rule 23 allows it the ability to opt-out of the

23  Settlement and pursue its claims individually (which two class members did).  (Hodne Decl. ¶ 12,

24  Ex. D.)

25      Accordingly, each of Cannata's objections to the claims process is unfounded and should

26  be overruled.

27  **B.  Settlement Administration and Notice Costs are a Benefit to the Class and Properly Included in the Settlement Fund**

28

Cannata next argues that, "as a matter of law," settlement administration and notice costs cannot be considered benefits to the class and should not be included a common settlement fund. Unsurprisingly, Cannata does not support these bald assertions with any authority, as countless courts, including the Ninth Circuit, have held just the opposite.  It is well-accepted that administrative expenses and notice costs are considered benefits to the putative class and are properly included in a common settlement fund.  *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("The post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class" and where it "is the defendant who pays for the notice, we may assume that the inherent incentives to minimize the cost involved are sufficient"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 797 (N.D. Ohio 2010) (noting that objector properly conceded that "Costs of Notice and Administration are legitimate components of the Total Class Benefit"); *Smith v. Grayling Corp.*, 2008 WL 3861286 (E.D. Pa. Aug. 20, 2008) (finding that defendant's "paying the cost of settlement administration" is "of substantial benefit to the Class"); *Williams v. Nat. Sec. Ins. Co.*, 237 F.R.D. 685, 697 (M.D. Al. 2006) (finding that the total benefit to the class includes the "negotiated fee to class counsel" and the costs "in administering the settlement").

In fact, Cannata recently advanced this precise argument in an objection, which was summarily rejected by the court, stating:

> Here, as in all class action settlements, the administrative costs of the settlement are necessary to achieve its overall success.  For example, while the costs of notice certainly benefit Defendants from the standpoint of claim preclusion, they also benefit Settlement Class members by alerting individuals to their potential right to recover.  Likewise, the costs of administering the settlement fund accrue to the Settlement Class members, as well, by creating a mechanism for recovery.  These costs can therefore be viewed as benefitting the Settlement Class as a whole.

*In re: Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*, (09-cv-07670) (Dkt. No. 112).  Those principles ring equally true here.  The notice plan developed by Kinsella / Rust benefitted the class by informing class members of their right to recover money, exclude themselves from the class, or object to the Settlement.  In selecting a notice plan, the Parties considered a diverse set of proposals from four well-respected settlement administrators, and ultimately chose the notice plan proposed by Rust Consulting because it was the most cost-

1   effective proposal that was specifically designed to reach a maximum number of putative class

2   members with the limited information available to the Parties.  (Andrews Decl. ¶ 11.)  Moreover,

3   Rust Consulting's continued administration of the Settlement is of great value to the class, as Rust

4   has processed claim forms, confirmed that class members are entitled to settlement payments, and

5   will ultimately deliver settlement payments directly to class members.[10]

6          Given that notice and administration expenses are properly considered benefits to the class

7   and included in the Settlement Funds, Cannata's suggestion that Class Counsel seek to receive an

8   improper "commission" on such costs and should only recover fees based on "what the class

9   actually receives" necessarily fails.  In determining the appropriateness of a fee request, the

10  appropriate measure is the total amount available in the common settlement fund, and not the

11  amount actually claimed by class members after the fact.  *See Staton*, 327 F.3d at 975 (where the

12  "defendant pays the justifiable cost of notice to the class" a court may "include that cost in a

13  putative common fund benefitting the plaintiffs for all purposes, including the calculation of

14  attorneys' fees"); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)

15  (holding that the district court abused its discretion in basing fees on class members' claims

16  against the settlement fund rather than a percentage of the entire fund); *Waters v. Int'l Precious*

17  *Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (finding that fees should be based on entire

18  settlement because class counsel's negotiation of $40 million settlement was beneficial to entire

19  class regardless of fact that a reduced number of claims were made).  It is thus little surprise that

20  Cannata recently advanced this precise argument—and the court expressly rejected it—in a

21  separate objection in California federal court.  *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 645

22  (S.D. Cal. 2011) ("objector [Sam] Cannata's argument that the Court should base the attorneys'

23  fee award on the amount actually claimed by class members is without merit as that argument has

24  been rejected" by the Ninth Circuit) (citing *Williams*, 129 F.3d at 1027 (1997)).

25         In short, the class unquestionably benefits from notice costs designed to inform them of the

26  _____

27      [10] In the interest of completeness, the Settlement Administrator has presently invoiced
    $965,874 and expects to invoice an additional $281,058 through the remainder of the settlement.
28

1    Settlement and their right to belief, as well as administrative costs designed to handle class

2    members' claims and insure that Settlement payments are made.  Accordingly, Cannata's

3    objection should be overruled.

4    **C.    The Settlement Provides for Strong Injunctive Relief That Need Not be "Valued"**

5              As demonstrated in Plaintiff's preliminary approval papers and is apparent from the

6    Settlement Agreement itself, the Settlement provides for sweeping injunctive relief designed not

7    only to ensure Defendants' prospective compliance with the TCPA, but also to enact industry-

8    changing practices that go well beyond the requirements of federal law.  Despite this, and without

9    reference to any of the injunctive provisions of the Settlement, Cannata asserts that the injunctive

10   relief is "illusory" because it merely "forces Defendants to not violate federal law."  This

11   argument is flatly incorrect and demonstrates a total lack of knowledge and research related to

12   TCPA class actions.

13             Specifically, should the Court grant final approval, an injunction will be entered requiring

14   that:  (1) Defendants and their business partners retain proof of all consumer consent to receive

15   text message advertisements for four years; (2) Defendants properly obtain "express consent" from

16   consumers to receive text message ads by placing clear notices in conspicuous locations on all

17   websites collecting cell phone numbers for the purpose of sending ads; (3) Defendants include

18   provisions in their third party business contracts going forward that require their business partners,

19   who either send text messages on their behalf or who provide customer phone numbers, to follow

20   the same restrictions applicable to Defendants on obtaining consent and using an automated

21   telephone dialing system to send text messages; and (4) members of the classes have the

22   opportunity to remove their cellular phone numbers from Defendants' databases so that they will

23   not be sent future text messages by or on behalf of Defendants.  (Dkt. 121-1 §§ 2.1- 2.2.)

24   Accordingly, Cannata's argument that the injunctive relief provided by the Settlement only

25   requires that Defendants "not violate federal law" is demonstrably false.

26             Nor does the Court need to be wary, as Cannata suggests, of the "true value of the

27   injunctive relief" provided by the Settlement.  Cannata's argument falsely presumes that Class

28   Counsel are seeking to increase their fee award by basing it in part on the value of the non-

1   monetary benefits of the Settlement.  Once again, Cannata simply misunderstands basic elements

2   of the Settlement and Class Counsel's fee request.  While the strong injunctive relief provided by

3   the Settlement undoubtedly provides tangible value to the Class (for which Class Counsel could

4   reasonably seek to increase their fees), the Parties need not attempt to value the Settlement's

5   injunctive measures or include the value in the Settlement Funds.  Rather, Class Counsel seeks

6   only a percentage of the $12.2 million monetary value of the Settlement Funds, without factoring

7   in any value provided by the prospective relief.  As a result, Cannata's objections relating to the

8   Settlement's injunctive relief are entirely without merit.

9       **D.    *Cy Pres***

10      Snider-Cannata, like Cope, first argues that any *cy pres* funds that are distributed must be

11  related to the objective of the class action.  This objection can be set aside for the same reasons

12  stated above.

13      Snider-Cannata then changes course and asserts that there should be no *cy pres* distribution

14  at all, arguing instead that all unclaimed funds should be paid *pro rata* to class members who

15  submit valid claims.  Snider-Cannata's argument flies in the face of uniform authority from the

16  Ninth Circuit, leading treatises, and countless district courts across the country, all of which have

17  approved the distribution of unclaimed funds to *cy pres* recipients in the context of class action

18  settlements.  *Hayes v. Arthur Young & Co.*, 1994 WL 463493, at *17 (9th Cir. 1994)

19  ("[d]istributing the unclaimed funds pro rata would thus give the claiming class members a

20  windfall; it might also encourage the bringing of class actions likely to result in large uncollected

21  damage pools and create conflicts of interest between the named plaintiffs and other class

22  members. Thus, any excess unclaimed damages should not be distributed among the claiming

23  plaintiffs.").

24      Recognizing that "most class actions result in some unclaimed funds," the Ninth Circuit

25  has long approved the use of *cy pres* distributions of some or all of the remaining funds.  *See Six*

26  *(6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).  The "*cy*

27  *pres* doctrine allows a court to distribute *unclaimed* or non-distributable portions of a class action

28  settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 2011 WL

1   5839610, *1 (9th Cir. 2011) (emphasis added); *see also Hartless*, 273 F.R.D. at 641-42 (holding

2   that *cy pres* funds are appropriate "where there are unclaimed funds" and where class members

3   who made claims will receive their full payment); *Tarleck*, 2009 WL 3720872, at *6 (granting

4   final approval to class action settlement agreement and ordering excess funds be donated to local

5   legal aid foundation via *cy pres* fund); *Herbert B. Newberg & Alba Conte*, NEWBERG ON CLASS

6   ACTIONS, at §10:16 (4th Ed. 2011) (when "an aggregate class recovery is not fully allocated to

7   class members, the unclaimed portion may be distributed for the indirect or partial benefit of the

8   class under *cy pres* principles."). Indeed, Plaintiff is not aware—nor does Cannata identify—any

9   case authority disallowing distribution of unclaimed monies to *cy pres* recipients.

10              **E.      The "Clear Sailing" Provision is Not Improper**

11              Finally, Snider-Cannata argues that Class Counsel's fee request should be heavily

12   scrutinized because it contains a "clear sailing" provision. Mr. Cannata is once again mistaken.

13   The Ninth Circuit has cautioned that settlements containing clear sailing provisions—an

14   agreement that a defendant will not contest class counsel's fee request—should be subject to

15   enhanced scrutiny where the provision includes a "kicker" arrangement reverting unawarded fees

16   directly to a defendant and where the requested fees are disproportionate to the recovery of the

17   class. *In re Bluetooth,* 654 F.3d at 947. In these situations, courts are primarily concerned that the

18   fee award is the result of a "separate, private agreement" whereby fees are paid separate and apart

19   from payments to the Class. *Id.*

20              While there does exist a "clear sailing" provision[11] in the Parties' Settlement, the requested

21   _____

22       [11] A "clear sailing" provision refers to a settlement term in which a defendant agrees not to
     challenge class counsel's fee request up to an agreed amount. The core of the Ninth Circuit's

23   concern related to such a provision is the instance in which the requested fee is agreed upon as an
     independent figure separate and apart from the amount provided to the class. *In re Bluetooth*, 654

24   F.3d at 947 ("when the parties negotiate a "clear sailing" arrangement providing for the payment
     of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a

25   defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an
     unfair settlement on behalf of the class.") Under those circumstances, the *In re Bluetooth* Court

26   cautioned, "the very existence of a clear sailing provision increases the likelihood that class
     counsel will have bargained away something of value to the class." [Citation omitted]. Therefore,

27   when confronted with a clear sailing provision, the district court has a heightened duty to peer into

28              (footnote continued)

1   attorneys' fees were negotiated solely as a percentage of the overall settlement Funds, meaning

2   that Class Counsel's fees were inextricably linked to the value of the monetary benefit to the

3   Class.  (Declaration of Eric D. Green ¶ 9, attached hereto as Exhibit 5); *see also In re Oracle*

4   *Securities Litigation*, 131 F.R.D. 688 (N.D. Cal. 1990) (noting that contingent, percentage based

5   fees act as "a monitoring device" and "align the interests of lawyer and client. The lawyer gains

6   only to the extent his client gains.")  The fee negotiations here came only after Class relief was

7   agreed upon by the Parties, the fee amount was not independently created or the product of "red-

8   carpet treatment" on fees in exchange for reduced benefits to the Class; rather, the fee agreement

9   and incentive award were the final negotiated points of a "package deal" and were entirely based

10  upon the benefits provided to the classes.  *See In re Bluetooth*, 654 F.3d at 947-949; (Green Decl.

11  ¶¶ 9-19; Andrews Decl. ¶ 12.)

12      Accordingly, the Parties' negotiations and Class Counsel's basis for the fee request speaks

13  to the non-collusive nature of this Settlement.  Cannata's final argument, therefore, should also be

14  rejected, if considered at all.

15  **IV.    CONCLUSION**

16      For the reasons detailed herein, the Court should find that neither Snider-Cannata

17  nor Cope are members of either the B2Mobile Class or the LeadClick Auto Class and strike their

18  objections.  In the alternative, should the Court consider the substance of the arguments presented

19  by either objection, they should be overruled for the reasons state above, and the Settlement and

20  fee request should be approved as fair, adequate, and reasonable.

21

22

23

24

25  _____

26  the provision and scrutinize closely the relationship between attorneys' fees and benefit to the
    class, being careful to avoid awarding "unreasonably high" fees simply because they are
27  uncontested."  *Id*. at 948.  The circumstances giving rise to the Ninth Circuit's concerns are not
    present in this settlement as Class Counsel's fee request is directly related to the Class relief.
28

Dated: January 12, 2012                    Respectfully Submitted,

                                           CHRISTOPHER KRAMER, individually and on
                                           behalf of classes of similarly situated individuals,

                                            /s/  Ryan D. Andrews
                                           One of Plaintiff's Attorneys




JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
RYAN D. ANDREWS (*Pro Hac Vice*)
randrews@edelson.com
CHRISTOPHER L. DORE (*Pro Hac Vice*)
cdore@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

1

## <u>CERTIFICATE OF SERVICE</u>

2

   The undersigned certifies that, on January 12, 2012, he caused this document to be

3

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4

notification of filing to counsel of record for each party.

5

6
Dated: January 12, 2012                                    EDELSON MCGUIRE, LLC

7
                                                            /s/  Ryan D. Andrews

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28