**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CHRISTOPHER KRAMER, individually and on behalf of all others similarly situated, | No. 10-cv-02722-CW |
| Plaintiff, | Honorable Claudia A. Wilken |
| v. | **FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE.** |
| AUTOBYTEL, INC., a Delaware corporation, and B2MOBILE, LLC, a California limited liability company, and LEADCLICK MEDIA, INC., a California corporation, | |
| Defendants. | |

This matter came before the Court for the Final Approval Hearing set by the Court, as well as Plaintiff's Motion for Final Approval of Class Action Settlement (dkt. 137), and Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Incentive Award (dkt. 127). The Court, having reviewed the papers filed in support of and in opposition to the motion, heard argument of counsel, and good cause appearing therein, Plaintiff's Motions are hereby GRANTED and it is hereby ORDERED, ADJUDGED, and DECREED THAT:

1. Terms and phrases in this Order shall have the same meaning as ascribed to them in the Settlement Agreement.

2. This Court has jurisdiction over the subject matter of this action and over all Parties to the Action, including all B2Mobile Class Members and LeadClick Auto Class Members (hereinafter collectively referred to as "Settlement Class Members").

3. On July 29, 2011, this Court granted Preliminary Approval of the Settlement Agreement and certified two settlement classes consisting of:

**"B2Mobile Class"** consisting of all Persons in the United States and its territories who, from January 1, 2008 until the date of preliminary approval, received a text message from Short Code 77893 or a text message containing a B2Mobile Website that was transmitted by or on behalf of B2Mobile and was sent without such Person's prior express consent.

**"LeadClick Auto Class"** consisting of all persons in the United States and its territories who, from January 1, 2008 until the date of preliminary approval, received an automobile-related text message from Short Code 77893 or an automobile-related text message containing a B2Mobile Website that was transmitted by or on behalf of B2Mobile and was sent without such Person's prior express consent.

4. Excluded from the B2Mobile Class are the following: the Defendants, LeadClick Auto Class Members (as defined herein and to the extent they only received auto-related text messages), the Settlement Administrator, the Mediator, and any respective parent, subsidiary, affiliate or control person of the Defendants or their officers, directors, agents, servants, or employees as of the date of filing of the Action, any judge presiding over the Action and the immediate family members of any such Person(s). Excluded from the LeadClick Auto Class are the following: the Defendants, the Settlement Administrator, the Mediator, and any respective parent, subsidiary, affiliate or control person of the Defendants, as well as their officers, directors, agents, servants, or employees, any judge presiding over the Action and the immediate family members of any such Person(s). The B2Mobile Class and the LeadClick Auto Class are hereinafter referred to as the "Settlement Classes."

5. Further excluded from the Settlement Classes are those persons who have submitted valid and timely requests for exclusion pursuant to the Preliminary Approval Order. Annexed hereto as Appendix 1 is a schedule of all such persons excluded from the Settlement Classes.

6. This Court now gives final approval to the settlement and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Classes. Specifically, the complex legal and factual posture of this case, and the fact that the Settlement Agreement is the result of arms' length negotiations presided over by a neutral mediator support this finding. The Class Representative and Class Counsel adequately represented the Settlement Classes for purposes of entering into and implementing the Settlement Agreement. Accordingly, the Settlement Agreement is hereby finally approved in all respects,

and the Parties are hereby directed to perform its terms.  The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth, and shall have the full force of an Order of this Court.

7. The Court approved Notice Plan to the Settlement Classes, as set forth in the Preliminary Approval Order on July 29, 2011, was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising.  The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process.

8. The Court finds that the Defendants properly and timely notified the appropriate state and federal officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.  The Court has reviewed the substance of Defendants' notices and accompanying materials, and finds that they complied with all applicable requirements of CAFA.

9. Subject to the terms and conditions of the Settlement Agreement, this Court hereby dismisses the action on the merits and with prejudice.

10. Upon the Effective Date of this settlement, the Plaintiff and each and every B2Mobile Class Member and LeadClick Auto Class Member who did not opt out of the Settlement (whether or not such members submit claims) and to the extent the LeadClick Auto Class Member or B2Mobile Class Member is not an individual, all of its present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, predecessors-in-interest, and all of the aforementioned's present, former, and future officers, directors, employees, shareholders, attorneys, agents, independent contractors; and, to the extent the LeadClick Auto Class Member or B2Mobile Class Member is an individual, any present, former, and future spouses, as well as the present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of each of them, shall be deemed to have released Defendants B2Mobile, LLC, and LeadClick Media, Inc., and any and all of their respective present or past heirs, executors,

estates, administrators, predecessors, successors, assigns, parents, subsidiaries, affiliates, associates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, corporations, officers, directors, other individuals or entities in which any of the Defendants have a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities, but specifically excluding all entities from whom B2Mobile obtained cellular phone numbers, other than LeadClick and B2Mobile; entities on whose behalf any text message was transmitted by or on behalf of B2Mobile, other than LeadClick and B2Mobile; and entities who received consumer internet traffic or leads that were linked or driven from a B2Mobile Website or text message that paid or otherwise compensated B2Mobile or its agents to drive such traffic, other than LeadClick and B2Mobile, from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims" as defined in the Agreement), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions or failures to act regarding the alleged sending of any text message from Short Code 77893 or any text message containing a B2Mobile Website, including any automobile-related text message from Short Code 77893 or automobile-related text message containing a B2Mobile Website that was transmitted by or on behalf of B2Mobile or LeadClick and allegedly received by the Plaintiffs, including all claims that were brought or could have been brought in the Action relating to such text messages.

11.	Upon the Effective Date, any action or claim for indemnification, including but not limited to actions or claims for breach of contract, contribution, or subrogation, that could be or could have been brought by LeadClick or B2Mobile against the other related to the Action or any of the facts, matters or agreements on which the claims in the Action were based are hereby released and dismissed with prejudice on the merits.

12.	Upon the Effective Date the above release of claims and the Settlement Agreement will be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members, Releasing Parties, and their heirs, executors and administrators, successors and assigns. All Settlement Class Members who have not been properly excluded from the Settlement Classes are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on or arising out of the Released Claims.

13.	Pursuant to the terms of the Settlement Agreement, LeadClick has consented to the entry of an injunction and is hereby enjoined, for a period of four (4) years following the Effective Date, as follows:

a.	to the extent its standard "Media Publisher Agreement" or any other agreement it enters into utilizes text message advertising of any kind, LeadClick shall modify or otherwise require such agreement to state that LeadClick and any entity with which it contracts are prohibited from advertising any LeadClick website or LeadClick "offer" by using or cooperating with others to use an ATDS to send SMS messages to cellular phones unless each text-message recipient has given explicit prior written consent to receive such text messages;

b.	to the extent its standard "Media Publisher Agreement" or any other agreement it enters into utilizes text message advertising of any kind, LeadClick shall modify or otherwise require such agreement to require LeadClick, its "publishers," or other advertisers obtaining consumer cell phone numbers to keep documented proof of all prior express consent received for a period of four (4) years after said consent is obtained;

1         c.       to the extent its standard "Media Publisher Agreement" or any other agreement it enters into utilizes text message advertising of any kind, LeadClick shall modify or otherwise require such agreement to state that the requisite "prior express consent" can be obtained "by oral or written means, including electronic methods" and require that if a cellular phone number is obtained on a website, that any authorization must include an affirmative action on the part of the consumer, such as checking a box or clicking on an "I Accept" "Submit," "Proceed," or similar button, with disclosures informing that the affirmative action will result in receiving text messages presented on the same page as the required affirmative action indicating consent, with the text of such disclosures placed within a reasonable distance (for example 200 pixels on a 100 PPI screen) from the telephone number submit field and in text of sufficient size and contrast to be clearly legible.

14.    Pursuant to the terms of the Settlement Agreement, B2Mobile has consented to the entry of an injunction and is hereby enjoined, for a period of four (4) years following the Effective Date, as follows:

        a.       B2Mobile shall not make, or cooperate with others to make, SMS text calls to cellular phones unless each text-message recipient has given explicit prior express consent to receive such text messages (in a manner explained below);

        b.       B2Mobile shall modify its standard "B2Mobile List Management Agreement," or any other such contract it enters into for the purpose of obtaining consumer cell phone numbers to transmit text messages, to require B2Mobile and each entity with whom it contracts to obtain consumer cell phone numbers to keep documented proof of all prior express consent received from the owners of said cell phone numbers for a period of four (4) years after said consent is obtained;

        c.       B2Mobile shall modify its standard "B2Mobile List Management Agreement," or any other such contract it enters into for the purpose of obtaining consumer cell phone numbers to transmit text messages, to state that the requisite "prior express consent" can be obtained "by oral or written means, including electronic methods" and require that if a cellular phone number is obtained on a website, that any authorization must include an affirmative action

on the part of the consumer, such as checking a box or clicking on an "I Accept," "Submit," "Proceed," or similar button with disclosures informing that the affirmative action will result in receiving text messages, which are presented on the same page as the required affirmative action indicating consent, with the text of such disclosers placed within a reasonable distance (for example 200 pixels on a 100 PPI screen) from the telephone number field or submit button, and in text of sufficient size and contrast to be clearly legible.

15.  The Court approves the agreed-upon Fee Award to Class Counsel in the amount of $3,050,000, which the Court finds to be fair and reasonable.  The Court finds this amount to be reasonable in that it represents 25% of the $12.2 million common fund established for the benefit of the Classes.  In this Circuit, a 25% fee is the accepted "benchmark" in common fund cases, and reasonable in light of the relevant factors.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  The Court additionally finds this amount fair and reasonable based upon a lodestar cross check.  Class Counsel provided the Court with documentation and sworn declarations supporting a lodestar of $1,129,629.  Specifically, Class Counsel expended 2741.7 hours in investigating, litigating, and resolving this case (including a reasonable estimation of upcoming hours).  Additionally, Class Counsel set forth the experience of each attorney working on the case and his or her corresponding billable rate.  The Court finds the rates charged to be appropriate and reasonable in light of the experience of each attorney and that the hourly rates are in line with comparable market rates.  The Court finds the hours expended to be reasonable when compared with the time and effort put forth by Class Counsel in investigating, litigating, and resolving this case, as well as in light of the results achieved for the Settlement Classes in terms of both monetary and injunctive relief.  Accordingly, the overall lodestar of $1,129,629, when enhanced by a reasonable multiplier of 2.69, provides a reasonable lodestar cross-check in awarding Class Counsel's Fee Award of $3,050,000.  Class Counsel's total Fee Award is inclusive of $14,192 in costs, which is likewise reasonable based on the documentation and sworn declarations submitted.

16.  Defendants shall pay the Fee Award pursuant to and in the manner provided by the terms of the Settlement Agreement.

17. The Court approves the payment by Defendants of $10,000 to the Class Representative Christopher Kramer as an incentive award for taking on the risks of litigation and helping achieve the results to be made available to the Settlement Classes, including sitting for a full day deposition. Such payment shall be made pursuant to and in the manner provided by the terms of the Settlement Agreement.

18. The Parties shall bear their own costs and attorneys' fees, except as otherwise provided in the Settlement Agreement and this Order.

19. This Court hereby directs the entry of this Final Judgment based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Final Judgment notwithstanding the Court's retention of jurisdiction to oversee implementation and enforcement of the Settlement Agreement.

20. This Final Judgment and order of dismissal with prejudice, the Settlement Agreement, the settlement that it reflects, and any and all acts, statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, or used as an admission by or against Defendants of any fault, wrongdoing, or liability on any Defendant's part, or of the validity of any Claim or of the existence or amount of damages.

21. The Parties, without further approval from the Court, are hereby permitted to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Judgment and do not limit the rights of Settlement Class Members.

22. Without affecting the finality of this Final Judgment in any way, this Court hereby retains continuing jurisdiction over, *inter alia*, (a) implementation, enforcement, and administration of the Settlement Agreement, including any releases in connection therewith; (b) resolution of any disputes concerning class membership or entitlement to benefits under the terms of the Settlement Agreement; and (c) all Parties hereto, for the purpose of enforcing and administering the Settlement Agreement and the Action until each and every act agreed to be performed by the Parties has been performed pursuant to the Settlement Agreement.

**IT IS SO ORDERED**

DATED this __27th__ day of __January__, 2012

_____
HONORABLE CLAUDIA A. WILKEN
UNITED STATES DISTRICT COURT